# EXHIBIT 4

## TO COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

## SEPARATION AGREEMENT AND GENERAL RELEASE

The following is a Separation Agreement and General Release (hereinafter "**Agreement**") between **Francis Orobono, Jr.** (hereinafter referred to as "**you**" or "**your**"), and **PetroChoice Holdings, Inc.** and any of its wholly owned subsidiaries and affiliates (collectively the "**Company**" or "**Company Group**") regarding your separation from the Company and your engagement by the Company as a consultant.

1. **SEPARATION CONSIDERATION**: In consideration for your agreement to enter into this Agreement, and subject to your compliance with your obligations under this Agreement and the Restrictive Covenants (as defined below), the Company will: (a) offer you, as severance pay, the gross amount of $14,583.33 plus $6,118.27 (for 72.72 hours of earned and unused PTO) to be paid to you, less payroll deductions required by law, on the Company's first regular payroll date following the effective date of this Agreement; (b) maintain you, for a period of 12 months, on the Company's medical insurance plan and pay your monthly premiums for such coverage during this period of time, subject to all of the terms and conditions that may be applicable to such medical insurance coverage; and (c) offer you a one-year Consulting Agreement, a copy of which is attached hereto as Exhibit A, upon the effective date of this Agreement, which shall provide you the opportunity to earn up to $160,416.67 in consulting fees over a 12-month period.[1] This Agreement shall be effective when both of the following have occurred: (a) the Company has received a copy of this Agreement bearing your original signature and (b) the seven-day rescission period in Paragraph no. 4(e) has expired without you having rescinded your acceptance of this Agreement.

2. **DATE OF EMPLOYMENT SEPARATION**: The separation from your employment with the Company was effective on **September 1, 2018** ("**Separation Date**"). You hereby acknowledge that your service to the Company and its divisions, units, subsidiaries, parents, predecessors in interest, and other affiliated entities (collectively, the "**Company Group**") in all other capacities also ceased as of the Separation Date, and that since the Separation Date you have held no positions, titles or offices with any member of the Company Group.

3. **GENERAL RELEASE**: You (on behalf of yourself and all of your heirs, assigns, legal representatives, successors in interest, or any person claiming through you (each, a "**Releasor**")) hereby release and discharge the Company and its divisions, units, subsidiaries, parents, benefit plans and all other affiliated entities as well as all of their current and former employees, officers, directors, agents, shareholders, attorneys, accountants, partners, insurers, advisors, partnerships, assigns, successors, heirs, predecessors in interest, joint venturers, and affiliated persons (collectively "**Released Parties**"), from any and all claims, demands or liabilities whatsoever, whether known or unknown, suspected or unsuspected to exist by you, which you ever had or may now have against the Company or any other Released Party, by reason of any and all matters from

---

[1] While the Consulting Agreement is attached hereto for informational purposes, it is not capable of acceptance by you until the effective date of this Agreement. Once this Agreement becomes effective, you may sign and return a copy of the Consulting Agreement to the Company and, upon the Company's receipt of same, the terms of the Consulting Agreement shall take effect in accordance with its terms. Once the Consulting Agreement takes effect, your rights and obligations under the Consulting Agreement shall be controlled solely by the terms of the Consulting Agreement without any impact on your, or the Company's, rights or obligations under this Agreement unless otherwise stated in the Consulting Agreement.

62342025_2

the beginning of time to the time of your execution of this Agreement, including without limitation, any charges, complaints, claims, demands or liabilities in connection with your employment with the Company Group and the separation of that employment, or pursuant to any federal, state or local laws, regulations, executive orders or other requirements (collectively "**Released Actions**"). In giving this general release, you hereby knowingly and voluntarily release any and all claims you have or may have against the Company and all other Released Parties. Finally, you agree that the Company's provision of the severance pay of $20,701.60 and health insurance benefits set forth in Paragraph No. 1 shall operate as sufficient consideration for your release of claims set forth in Paragraph Nos. 3 and 4 of this Agreement, and that your obligations under Paragraph Nos. 3 and 4 of this Agreement shall survive any dispute that may arise between you and the Company regarding the Consulting Agreement.

4. **KNOWING AND VOLUNTARY WAIVER OF EMPLOYMENT DISCRIMINATION CLAIMS OF ANY NATURE:** You specifically intend to include, as a Released Action, any claims related to race, color, ancestry, national origin, sex, pregnancy, disability, medical condition, religion, age, sexual orientation, marital status or other protected category discrimination in employment under Title VII of the 1964 Civil Rights Act, the Age Discrimination in Employment Act of 1967, as amended by the Older Workers' Benefit Protection Act of 1990 ("ADEA"), the Americans with Disabilities Act, the Fair Labor Standards Act, the Family and Medical Leave Act, the Civil Rights Law, the Wage Payment and Collection Law, the Minimum Wage Act, or other state or local employment law, or any other law, regulation or ordinance, that may have arisen before the effective date of this Agreement, including but not limited to, those arising from your employment and separation from the Company.

Age Discrimination in Employment Act of 1967:

    a.    <u>Age discrimination is specifically intended to be included as a Released Action</u>: You specifically intend that Released Actions shall include claims under the ADEA, except for any allegation that a breach of this Act occurred following the effective date of this Agreement. This provision does not extend to any rights you may have to challenge the validity of the release of claims arising under the ADEA.

    b.    <u>Additional Consideration</u>: You agree that promises in this Agreement by the Company represent obligations by the Company to you that are in addition to anything of value to which you were otherwise entitled from the Company. In addition, you agree and acknowledge that pursuant to this Agreement, additional consideration is being paid by the Company (beyond that which would have otherwise been paid) in order to effect a valid waiver of your claims under the federal age discrimination laws.

    c.    <u>Advice To Consult An Attorney</u>: You are hereby advised to consult with your attorney prior to signing this Agreement. You acknowledge that you have been so advised and have in fact consulted fully with your attorney prior to your signing this Agreement.

    d.    <u>Reasonable Time To Consider Separation Agreement/ Rescission Period</u>: You acknowledge that you have been given 21 days (until September 22, 2018) to consider and sign this Agreement, although you may accept it at any time during this 21-day period. You understand that you have seven (7) days following your signing of this Agreement to rescind it. To rescind this Agreement, you must fax or e-mail your rescission, signed by you, to (866) 215-

4432 (if by fax) or to macevedo@petrochoice.com (if by e-mail) before the end of the seven-day rescission period and the content of such fax must clearly convey your intent to rescind your prior acceptance of the terms of this Agreement. In the event of such a rescission, the Company shall not be obligated to provide you any of the benefits set forth in this Agreement, including any payments pursuant to the Consulting Agreement referenced in Paragraph No. 1.

    f. Protected Rights: You understand that nothing contained in this Agreement limits your ability to file a charge or complaint with the Equal Employment Opportunity Commission, the National Labor Relations Board, the Occupational Safety and Health Administration, the Securities and Exchange Commission or any other governmental agency ("Government Agencies") nor does it otherwise prohibit you from participating or otherwise assisting such governmental entities with respect to any potential or pending investigation or proceeding. You further understand that nothing in this Agreement, or any other policy or practice of the Company, limits your ability, without prior consent from the Company, to disclose information to the Government Agencies with regard to laws that they are authorized to enforce or investigations that they are authorized to conduct. The foregoing notwithstanding, by signing this Agreement you waive your right to recover any individual relief (including any money damages, reinstatement or other legal or equitable relief) in any charge, complaint, or lawsuit or other proceeding brought by you or on your behalf by any third party, except for any right you may have to receive a payment from a government agency (and not the Company) for information provided to the government or where such a waiver is prohibited.

5. **401(k) BENEFITS; REIMBURSEMENT OF BUSINESS EXPENSES**: Your signing this Agreement will have no effect whatsoever on any rights you have or may have in the future to collect benefits under any 401(k) Plan of the Company, or to roll over those monies into an eligible retirement plan. Any such benefits shall be payable (or not payable) or rolled over in exactly the same manner, on exactly the same terms and under exactly the same conditions as though this Agreement had never been entered into. Your signing this Agreement also will not adversely affect your rights to reimbursement for any reasonable business expenses incurred by you in furtherance of your duties to the Company Group prior to the Separation Date in accordance with applicable Company Group policies, provided that documentation thereof is properly submitted not later than September 15, 2018.

6. **NO RIGHTS TO OTHER PAYMENTS OR BENEFITS**: You acknowledge and warrant that, except as explicitly provided in Paragraph Nos. 1 or 5 of this Agreement, you are not entitled to any additional payments of any type, including but not limited to wages, overtime, vacation, commission, bonus, stock options, preferred stock, severance, or sick days, and have no further rights under any plan, policy, contract or agreement (including, without limitation, any employment agreement and/or collective bargaining agreement). You hereby knowingly and voluntarily release and forever discharge the Released Parties of and from any and all claims you ever had, may have had, now have, or shall or may have to the subject matter of this Paragraph No. 6, all of which claims are specifically intended to constitute Released Actions, unless otherwise specifically provided for in this Agreement.

7. **NO TRANSFERRED CLAIMS**: You represent that you have not filed any complaints or charges or lawsuits against the Company or any other Released Party with any governmental agency or any court, and have not assigned or transferred any cause of action to any third party.

Pl.'s Compl. Ex. 4

8. **COOPERATION**: You agree to fully cooperate in any litigation, investigation and/or administrative or governmental proceeding arising out of or relating to your employment with the Company Group. You agree, upon reasonable notice, to cooperate fully in any such litigation, investigation and/or administrative or governmental proceeding by making yourself available for interviews, testimony preparation, discovery, truthful trial testimony, and any other matter reasonably necessary to protect the interest of the Company or any other Released Party in any such litigation, investigation and/or administrative or governmental proceeding. Your breach of this provision shall constitute a material breach of this Agreement. The Company shall reimburse you for all reasonable out-of-pocket expenses incurred at the request of the Company in connection with your obligations under this Paragraph.

9. **RETURN OF PROPERTY; NON-ENTRY**: You agree to return immediately all of the Company Group's property in your custody, possession or control, including but not limited to any security access cards, car decals for access to the Company's parking lot, keys, personal computers, computer disks, cellular telephones, dvds, cds, memory cards, hard drives, flash drives, laptops, tablets, smartphones, work files, memoranda, notes, records and other documents made or compiled by you or made available to you during the term of your employment and related to that employment. You further agree not to enter any premises of the Company Group or access any of its phone, computer, electronic or other systems without the express written prior permission of the Company's chief executive officer or Board of Directors.

10. **CONFIDENTIAL INFORMATION; NO COMPETE; NO SOLICITATION; NO DISPARAGEMENT**: You acknowledge that you shall honor all confidentiality, non-compete, non-solicitation, non-hire and non-disparagement obligations with the Company Group to which you are subject, including without limitation, your obligations under the Company's written policies, and specifically including all restrictive covenant provisions contained in the Employment and Restrictive Covenant Agreement signed by you and Craft Oil Corporation (predecessor of the Company) dated March 31, 2008, the Management Equity Agreement signed by you and Stryker Topco, L.P. dated April 11, 2016, the Securities Rollover Agreement signed by you and Stryker Topco, L.P. signed by you when Golden Gate Capital purchased the Company and all of your obligations and restrictions as a shareholder, if any, contained in the Stock and Asset Purchase Agreement of Craft Oil Services, LLC dated November 5, 2012 and all related documents thereto, all collectively, the "**Restrictive Covenants**." If you enter into the Consulting Agreement contemplated in Paragraph No. 1 of this Agreement, you agree that the Restrictive Covenants shall continue to remain in force during the term of the Consulting Agreement in the same manner had you continued your employment with the Company and, upon the termination of the Consulting Agreement for any reason, shall apply in the post-consulting period in the same manner and for the same time-period as they would have applied upon a termination of employment. You also agree that you will not take, and since beginning employment with the Company have not taken, (i) any actions that might harm the business interests of the Company or any other Released Party, (ii) any actions that violate any of the Restrictive Covenants, or (iii) any corporate or executive action on the part of the Company Group. You also agree that you will not hold yourself out as having the authority to take any action on the part of the Company or any other member of the Company Group. Additionally, you will not make or cause to be made or condone the making of any statement, comment or other communication, written or otherwise, that could constitute disparagement or criticism of, or that could otherwise be considered to be derogatory or detrimental to, or otherwise reflect adversely on, harm the reputation of, or encourage any adverse action against, the Company or any of any of the products or services of

the Company. You acknowledge that if you breach any of the Restrictive Covenants, any of the terms of this Paragraph, and/or any other terms of this Agreement, the Company will sustain irreparable injury and will not have an adequate remedy at law. As a result, you agree that in the event that the Company determines that you have breached any of the Restrictive Covenants or any of the terms of this Agreement, in addition to any other remedies the Company Group may have available to it, the Company may immediately terminate this Agreement and seek disgorgement of all monies paid to you under this Agreement.

11. **CONFIDENTIAL AGREEMENT**: You agree that you will keep the terms, amount, and the facts and circumstances leading up to this Agreement completely confidential and will not disclose them to any person or entity within our outside the Company Group, except that you may disclose any such information as required by subpoena or court or to your spouse/immediate family or to your attorneys or tax advisors for purposes of obtaining legal and/or tax-related services. Upon subpoena or court order, you shall not be restricted in any fashion from giving truthful testimony in any legal or regulatory proceeding, provided that you shall at the earliest practicable date provide a copy of such subpoena or court order requesting or compelling such testimony to the Company, it being your intention to give the Released Parties a fair opportunity to take appropriate steps to prevent the unnecessary or improper use or disclosure of any such information or giving of testimony. You agree and acknowledge that this confidentiality provision is a material term of this Agreement. You agree to honor the Restrictive Covenants in accordance with their terms.

12. **ENTIRE AGREEMENT; ONLY WRITTEN MODIFICATIONS; SEVERABILITY**: It is expressly understood that there is no agreement or understanding between you and the Company or any Released Party about or pertaining to the matters governed by this Agreement including but not limited to the separation of your employment with any Released Party, or any Released Party's obligations to you with respect to such separation, except what is written in this Agreement, in the Restrictive Covenants referenced herein or in the Employment Agreement, the Management Equity Agreement, the Securities Rollover Agreement and the Stock and Asset Purchase Agreement of Craft Oil Services, LLC and all related documents thereto referenced in paragraph 10. For purposes of clarity, this Agreement shall supplement and not supersede any obligations that apply to you under the Restrictive Covenants. Except as provided in the two immediately preceding sentences, this written Agreement supersedes any prior agreement, written or oral, express or implied concerning the matters governed by this Agreement. You acknowledge that your rights to payments or benefits from the Company Group are set forth in Paragraph 1. In the event of sale of the majority interest in the Company or the dissolution of the Company, this Agreement shall remain binding and all payments due you will be paid as obligations of the Company prior to close of said sale or dissolution. This Agreement may not be amended or varied except in writing signed by you and the chief executive officer or chairman of the Board of Directors of the Company. If any provision of this Agreement is deemed to be invalid or unenforceable, any such provision will be severed from the Agreement and not affect the validity of the other provisions of the Agreement, with the exception of Paragraph Nos. 3 or 4. If Paragraph Nos. 3 or 4 is deemed invalid or unenforceable, the Company has the right to void this Agreement and recover all payments provided to you hereunder.

13. **INDEMNIFICATION**: You shall indemnify Released Parties against any loss or liability whatsoever, including reasonable attorney's fees, caused by any lawsuit (an action brought in state

Pl.'s Compl. Ex. 4

or federal court) that is brought by you with respect to any Released Action, unless such action is expressly permitted by the terms of Paragraphs Nos. 3 or 4.

14. **CHOICE OF LAW/VENUE:** This Agreement shall be interpreted under the laws of the State of Delaware. Any legal action based upon this Agreement shall be initiated in a state or federal court of competent jurisdiction in the state of Delaware.

15. **EFFECTIVE DATE:** If this Agreement is executed on different days by the parties, the effective date of this Agreement will be the last date of execution by any party hereto.

16. **CONSTRUCTION.** As used in this Agreement, the word "including" means "including, without limitation."

*[Signature page follows]*

IN SIGNING THIS AGREEMENT, EACH PARTY IS HEREBY ADVISED TO CONSULT WITH AN ATTORNEY OF ITS OWN CHOICE PRIOR TO SIGNING THIS AGREEMENT AND REPRESENTS AND WARRANTS THAT IT HAS CAREFULLY READ AND FULLY UNDERSTANDS THIS AGREEMENT AND ITS FINAL AND BINDING EFFECT; HAS BEEN AFFORDED REASONABLE TIME AND OPPORTUNITY TO REVIEW THIS AGREEMENT WITH LEGAL ADVISORS OF ITS OWN CHOICE; HAS HAD AN OPPORTUNITY TO NEGOTIATE WITH REGARD TO THE TERMS OF THIS AGREEMENT; HAS SIGNED THIS AGREEMENT KNOWINGLY, FREELY AND VOLUNTARILY; IS FULLY COMPETENT TO MANAGE ITS OWN BUSINESS AFFAIRS; HAS APPARENT AND ACTUAL AUTHORITY TO ENTER INTO OR SIGN THIS AGREEMENT; AND THAT THE ONLY PROMISES MADE TO INDUCE EACH PARTY TO SIGN THIS AGREEMENT ARE THOSE STATED HEREIN.

Executed at __West Chester, PA__, this __6__ day of __September__, 2018.
(city, state)

_____
**Francis Orobono, Jr.**

Executed at _____ this ____ day of _____, 2018.
(city, state)

PETROCHOICE HOLDINGS, INC.

By: _____

Title: _____

Please mail executed agreement to:

Marilena Acevedo
PetroChoice Holdings, Inc.
739 N. State Street
Elgin, IL  60123
Email: macevedo@petrochoice.com

## EXHIBIT A[2]

## CONSULTING AGREEMENT

This Consulting Agreement ("Agreement") is entered into on _____, 2018, by and between PetroChoice Holdings, Inc. ("the Company") and Francis Orobono, Jr. (referred to herein as the "CONSULTANT" OR "CONTRACTOR"):

WHEREAS, Consultant terminated his employment with the Company on September 1, 2018;

WHEREAS, Consultant and the Company have entered into an Separation Agreement and General Release ("the Release), which has now become effective according to its terms;

WHEREAS, the Release provides that the Company shall offer Consultant a Consulting Agreement with a one-year term;

WHEREAS, Consultant hereby wishes to serve as a Consultant on behalf of the Company; and

In consideration of the promises and covenants contained in this document, the Company and Consultant agree as follows:

1. **THE RESPONSIBILITIES AND RELATIONSHIPS OF THE PARTIES**

    a. As of the date of this Agreement, and provided that Consultant consummates the transaction known as Project Right within 60 days from the date hereof, the Consultant agrees to perform the following consulting items, in the Company's sole discretion, for a period of one-year following the execution of this Agreement by both the Company and Consultant:

        (1) Commercially reasonable assistance as requested on transition of accounts and strategic accounts, government bids and oil and gas customers, including Christian Bros. and Onsite Fleet Service International.

        (2) Commercially reasonable assistance as requested with the litigation between the Company and Ron Peterson; and

        (3) Commercially reasonable assistance as requested with the NC service department options

---

[2] This Agreement is provided for informational purposes only and is not capable of acceptance until after the effective date of the Release. After the Release becomes effective, the Company will provide you with a copy of this Agreement for execution purposes, which must be signed by you and returned to the Company within seven days after it is issued to you; if this does not occur, then the offer set forth in this Agreement shall lapse and no longer be capable of acceptance.

b.  In the event that Consultant does not, for any reason, consummate the transaction known as Project Right within 60 days from the date hereof, the Consultant agrees to perform the following consulting projects, in the Company's sole discretion, for the reaming term of the Agreement:

   (1) Providing ongoing consulting support that the Company deems necessary to facilitate a successful transition of Consultant's prior employment responsibilities, including customer retention including:

      (a) Christian Bros., Onsite Fleet Service, Government Bids and Oil & Gas deals

      (b) Assist Sales Managers with prior staff and related transition efforts

   (2) Providing the Company with ongoing advice and support, which may include (a) sourcing acquisition candidates; (b) providing strategic advice and other support with respect to large accounts; and (c) otherwise providing business development advice and support as requested by the Company;

   (3) Providing full support, at the Company's sole discretion, in all matters related to the litigation between the Company and Ron Peterson; and

   (4) Consultant will provide the foregoing consulting services with timeliness, honesty and in accordance with the Company's reasonable standards of quality and behavior that it generally expects from its consultants and vendors.

c.  The relationship between the Company and Consultant is one of client to consultant, not one of employer-employee.

d.  In performing these consulting assignments, Consultant agrees to act at all times as an independent contractor and not as an employee of the Company.

e.  While the Company retains the right to control the results to be accomplished, Consultant retains the right to control the manner or means by which the responsibilities described in this Agreement are to be performed.

f.  Consultant may engage in any outside business activity or venture in any manner he desires, subject to the restrictions set forth or referenced in the Release or in any other agreement between Consultant and the Company. Consistent with such restrictions, Consultant is free to:

   (1) solicit business with other entities;

   (2) hire, direct and pay assistants;

Pl.'s Compl. Ex. 4

      (3)    maintain an office;

      (4)    own such equipment and materials as are necessary to conduct its business; and

      (5)    hold a business or trade license.

  g.    Consultant shall remain in compliance with all obligations set forth in the Release, expressly including the restrictions set forth in Paragraph No. 10 of the Release.

  h.    Consultant will not provide any of the consulting projects or services described in paragraph 1(a) or 1(b) above, as the case may be, at any Company facility without the advance consent of the Company.

2. **FEE FOR SERVICE**

The Company will pay Consultant a fee of $13,368.06 per month paid in arrears for services performed under this Agreement. Consultant agrees to provide an invoice for this monthly fee to the Company for each one month interval of this Agreement's 12-month period and the Company agrees that it will process and pay said invoice(s) within a reasonable period of time after receipt, generally within the 14-day period after the invoice is received from the Company.

3. **REPRESENTATIONS**

Consultant states and promises to the Company that the following facts are true:

  a.    Consultant has no authority to enter into contracts or other agreements on behalf of the Company.

  b.    Consultant has complied with all the following, is not currently in violation of any of the following, and agrees to continue to comply with the following during the term of the Agreement: all federal, state, and local laws, rules and ordinances regarding business permits, licenses, orders, approvals, concessions, and franchises of any and every kind that are required of Consultant by any federal, state or local governmental or regulatory body, in order to carry out the business of Consultant and to perform those tasks set forth herein.

  c.    Since Consultant is engaged in its own business and is not an employee of the Company:

      (1)    Consultant is not eligible for and shall not participate in, any pension, health, or other employee benefit plan of the Company other than as specifically provided in the Release;

Pl.'s Compl. Ex. 4

(2) Consultant is not subject to the Company's work rules or employment policies;

(3) Consultant has the sole responsibility to pay any and all federal, state and local income and self-employment (i.e., social security) taxes relating to the activities of Consultant, and Consultant agrees to indemnify and hold harmless the Company, and all of its owners, agents, employees, parent and affiliated companies, successors and assigns, from all claims, demands and liabilities, including costs and attorneys' fees, to which the Company may be subjected by reason of Consultant's failure to pay any employment taxes.

(4) It is Consultant's sole responsibility to obtain and pay for workers' compensation insurance, public liability insurance, property damage, and any other insurance coverage which may be necessary to fully insure against any loss or damage arising out of, or as a result of any act or omission, including, but not limited to, performance by Consultant of the tasks set forth in this Agreement.

4. **TERMINATION OF AGREEMENT**

This Agreement may be terminated as follows:

a. This Agreement shall expire, and thus terminate, one year after its effective date. The Company's financial obligations under this Agreement shall cease upon its expiration provided that it has paid Consultant all fees to which he is entitled under Paragraph No. 2.

b. Upon seven (7) days prior written notice by the Company to Consultant for reasons other than "cause." If the termination is for reasons other than "cause" (as defined below), the Company shall pay Consultant through the one-year term of this Agreement in the same manner had this Agreement not terminated. Provided, however, the Company may convert a termination from being "other than for cause" to one for "cause" if it learns of any conduct that constitutes "cause" after the termination takes effect; in that event, the Company shall have the same remedies as if the termination had been for "cause," including disgorgement of fees paid under this Agreement and the cessation of future payments under this Agreement.

c. Upon written notice by the Company to Consultant for "cause." For purposes of this Agreement, "cause" shall mean: (a) failure of Consultant to perform the responsibilities set forth in Paragraph Nos. 1(a) or 1(b) (as the case may be) of this Agreement to the Company's reasonable satisfaction; (b) a violation of any other provision of this Agreement; or (c) a violation by Consultant of any provision of the Release, including, but not limited to, Paragraph Nos. 3, 4, 9 or 10 of the Release. Consultant shall not be entitled to any future monthly fees for services rendered under this Agreement upon a termination of this Agreement for "cause." Further, the

Company shall be entitled to a disgorgement of all fees paid under this Agreement if the Company terminates this Agreement for "cause."

d. Upon written notice by Consultant to the Company. The Company shall not have any duty to pay Consultant any fees under this Agreement subsequent to a termination of this Agreement by Consultant for any reason. Consultant shall provide 30 days prior written notice of termination to the Company; failure to provide such written notice shall result in forfeiture of any unpaid monthly fees under this Agreement.

5. **WORK PRODUCT**

Consultant acknowledges that as a part of his services performed under this Agreement, he is expected to create or contribute to the development of ideas, documents, reports, and other work product related to the business activities of the Company (collectively, the "Work Product"). All Work Product that Consultant creates while he is retained by the Company shall be the sole and exclusive property of the Company, as a work made for hire.

6. **NO CONFLICT**

Consultant represents and warrants that he is not currently bound by any other employment agreement, restrictive covenant or obligation.

7. **MISCELLANEOUS**

a. Consultant is expected to supply his own equipment, supplies and tools as is necessary for it to successfully perform the responsibilities contemplated hereunder.

b. Consultant shall be responsible for supervising and paying any assistant or sub-contractor he hires or uses on any project to be performed in connection with this Agreement.

c. Consultant shall be free to perform services in the order or sequence he desires provided that each project is undertaken and completed in a timely manner.

d. Company will reimburse Consultant for reasonable out of pocket expenses incurred in performing responsibilities under this Agreement.

e. If any provision of this Agreement is found to be invalid or unenforceable, such finding shall not affect the validity or enforceability of any other provision of this Agreement.

f. Agreement shall be interpreted under the laws of the State of Delaware. Any legal action based upon this Agreement shall be initiated in a state or federal court of competent jurisdiction in the state of Delaware. Consultant shall be obligated to pay the Company's attorneys' fees and costs in connection with any legal action he brings against the Company in connection with this Agreement and in which the Company prevails.

Pl.'s Compl. Ex. 4

8. In the event that any of the terms, conditions or provisions of this Agreement shall be determined by a court of competent jurisdiction to be against public policy or unreasonably long in time or broad in scope, any such term, condition, or provision hereof shall be automatically amended to read that it shall endure only so long as the longest time permitted by the public policy of the jurisdiction whose policy is violated, and shall be narrowed in scope to that permitted by the public policy of the jurisdiction whose policy is violated.

*[Signature page follows]*

IN WITNESS WHEREOF, the Company and Consultant have voluntarily signed and entered into this Agreement on the date(s) set forth below.

Francis Orobono, Jr.                              PetroChoice Holdings, Inc.

_____          _____
Authorized Signature                              Authorized Signature

9/6/2018
_____          _____
Date                                                          Date

Pl.'s Compl. Ex. 4