IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETROCHOICE HOLDINGS, INC.<br>　　　　Plaintiff,<br><br>　　v.<br><br>FRANCIS S. OROBONO, JR.<br>　　　　Defendant. | :<br>:<br>:<br>:　CIVIL ACTION<br>:<br>:　NO.: 19-6152<br>:<br>:<br>:<br>: |

## ORDER

AND NOW, this ____ day of _____, 2020, it is HEREBY ORDERED AND DECREED that Count III (Computer Fraud and Abuse Act), Count VII (Breach of Duty of Loyalty), Count VIII (Tortious Interference with Contract), and Count IX (Intentional Interference with Prospective Contractual Relations) of the Complaint of Plaintiff PetroChoice Holdings, Inc. are DISMISSED with prejudice.

BY THE COURT:

_____
Timothy J. Savage　　　　　　J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETROCHOICE HOLDINGS, INC.<br>Plaintiff,<br><br>v.<br><br>FRANCIS S. OROBONO, JR.<br>Defendant. | :<br>:<br>:<br>:  CIVIL ACTION<br>:<br>:  NO.: 19-6152<br>:<br>:<br>:<br>: |

## DEFENDANT'S PARTIAL MOTION TO DISMISS

Defendant Francis J. Orobono, Jr. ("Defendant" or "Orobono"), by and through his undersigned counsel, moves to dismiss Count III (Computer Fraud and Abuse Act), Count VII (Breach of Duty of Loyalty), Count VIII (Tortious Interference with Contract), and Count IX (Intentional Interference with Prospective Contractual Relations) of the Complaint of Plaintiff PetroChoice Holdings, Inc. pursuant to Fed. R. Civ. P. 12(b)(6).

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Law, which Defendant incorporates by reference as if fully set forth at length herein, Defendant respectfully requests that this Court dismiss Counts III, VII, VIII, and IX of the Complaint.

LAMB McERLANE PC

Date:  February 10, 2020       BY:  s/Mary-Ellen H. Allen
                                    Joel L. Frank
                                    I.D. No. 46601
                                    Mary-Ellen H. Allen
                                    I.D. No. 83885
                                    24 East Market Street
                                    Post Office Box 565
                                    West Chester, PA  19381-0565
                                    610-430-8000
                                    jfrank@lambmcerlane.com
                                    mallen@lambmcerlane.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETROCHOICE HOLDINGS, INC.<br>Plaintiff, | :<br>:<br>: |
| v. | :  CIVIL ACTION<br>:<br>:  NO.: 19-6152 |
| FRANCIS S. OROBONO, JR.<br>Defendant. | :<br>: |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
<u>PARTIAL MOTION TO DISMISS</u>**

Defendant Francis J. Orobono, Jr. ("Defendant" or "Orobono"), by and through his undersigned counsel, respectfully submits this Memorandum of Law in support of the Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth herein, Defendant respectfully requests that this Court dismiss Counts III (Computer Fraud and Abuse Act), VII (Breach of Duty of Loyalty), VIII (Tortious Interference with Contract), and IX (Intentional Interference with Prospective Contractual Relations) for failure to state a claim upon which relief can be granted.

**I.   INTRODUCTION**

In the Complaint, Plaintiff PetroChoice Holdings, Inc. (hereinafter "Plaintiff" or "PetroChoice") alleges that Defendant Orobono downloaded certain PetroChoice confidential documents and information, purportedly has disseminated such information and allegedly is utilizing the information in order to unfairly compete with PetroChoice.

Even accepting these allegations as true, PetroChoice does not have a viable claim under the Computer Fraud and Abuse Act 18 U.S.C. §1030, et seq. ("CFAA") (Count III). The general purpose of the CFAA is to create a cause of action against computer hackers. An individual who

1

may access a computer by the terms of his employment (or in this case consulting agreement) is authorized to use that computer for purposes of CFAA even if his purpose in doing so is to misuse or misappropriate the employer's information. Defendant's access to the computer system by virtue of his consulting relationship with PetroChoice is not a violation of the CFAA and the claim must be dismissed.

Further, PetroChoice alleges Defendant Orobono's conduct constitutes a breach of various employment related agreements with Orobono. Despite the fact that Plaintiff's claims are based in contract, Plaintiff, nonetheless, attempts to bring various tort claims. Plaintiff's tort claims for breach of duty of loyalty (Count VII) and tortious interference with contractual and prospective contractual relations (Counts VIII and IX) are grounded in the terms of the agreements at issue and are inextricably intertwined with the obligations contained therein. Plaintiff has merely re-cast its breach of contract claims as tort claims. Consequently, these claims for breach of duty of loyalty and tortious interference are precluded by the gist of the action doctrine and must be dismissed.

## II.   **RELEVANT FACTUAL HISTORY**

Plaintiff PetroChoice is a distributor and manufacturer of petroleum and ancillary products and services. Defendant Orobono is a former employee and former consultant for PetroChoice. This action stems from PetroChoice's allegations that Orobono accessed PetroChoice's computer systems while serving in his role as a consultant and downloaded documents, which PetroChoice contends contain trade secrets and other confidential and/or propriety information. PetroChoice further alleges that Orobono then used this information to unfairly compete with PetroChoice by, among other things, soliciting PetroChoice's current customers through coordination with Jack Williams Tire Co. Inc. ("JWT"), Orobono's current employer.

PetroChoice specifically contends in the Complaint that Orobono's actions of accessing and downloading PetroChoice's information, competing with PetroChoice, and soliciting existing

clients, constitute a breach of three separate contracts, each of which contain restrictive covenants. More specifically, PetroChoice contends that Orobono agreed to a series of contracts including a certain Employment Agreement, Management Equity Agreement, Separation Agreement and General Release, and Consulting Agreement. The pertinent contracts are annexed as Exhibits to Plaintiff's Complaint and collectively are referred to herein as "Agreements". PetroChoice alleges Orobono breached the Management Equity Agreement (Count IV), the Separation Agreement (Count V), and the Consulting Agreement (Count VI).

Orobono was an employee of PetroChoice for years and, thereafter, acted as a consultant to PetroChoice. During the course of his employment and during the time Orobono acted as a consultant, PetroChoice allowed Orobono access to their computer system, first through Citrix and subsequently through Microsoft 365. Complaint at ¶ 95, 97. PetroChoice alleges it terminated Orobono's access to Citrix at the cessation of his employment/outset of his consulting relationship but there is no allegation that Orobono's access to PetroChoice's system through Microsoft 365 was terminated. Complaint at ¶ 97. During the course of the consulting relationship with PetroChoice, Orobono had both a username and a password, which enabled him to access the computer system at issue. As explained more fully herein, Orobono's access to PetroChoice's computer system through legitimate means, regardless of any alleged nefarious intent to misuse the information, means there is no viable claim under the Computer Fraud and Abuse Act, and, consequently, such claim must be dismissed.

Likewise, Plaintiff's claims for breach of duty and loyalty and tortious interference also must be dismissed. Plaintiff sets forth twelve separate causes of action against Defendant. Counts IV, V, and VI are claims for breach of three separate Agreements: the Management Equity Agreement, the Separation Agreement, and the Consulting Agreement, each of which contain (or

3

incorporate by reference) restrictive covenants prohibiting competition, solicitation, and contain confidentiality provisions. Plaintiff's allegations that Defendant Orobono breached the restrictive covenants contained in the Agreements form the basis of the Complaint. Plaintiff's tort claims for breach of duty of loyalty (Count VII) and tortious interference with contractual and prospective contractual relations (Counts VIII and IX) are grounded in the terms of the Agreements and are inextricably intertwined with the obligations of the Agreements. Plaintiff has merely re-cast its breach of contract claims as tort claims. For the reasons set forth more fully herein, each of these tort claims is barred by the "gist of the action" doctrine and must be dismissed.

### III.   STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *see also Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

In *Bell Atl. Corp. v. Twombly*, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007). Following *Twombly*, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 234 (quoting *Twombly*, 550

4

U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

With respect to a motion to dismiss, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions. *AFL Phila. LLC v. Krause*, 639 F. Supp. 2d 512 (E.D. Pa. 2009). Pleadings must include factual allegations to support the legal claims asserted. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* To survive a motion to dismiss, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## IV.   ARGUMENT

### A.   Plaintiff Failed to State a Claim Under the Computer Fraud and Abuse Act.

Plaintiff has not pled the required elements necessary to sustain a claim under Count III for alleged Violation of the Computer Fraud and Abuse Act 18 U.S.C. §1030, et seq. ("CFAA"). In order to state a claim under the CFAA, a plaintiff must allege (1) defendant accessed a "protected computer"; (2) did so without authorization or by exceeding such authorization as was granted; (3) did so "knowingly" and with "intent to defraud"; and (4) as a result has furthered the intended fraud and obtained anything of value.

"Exceeds authorized access" is defined as: "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." *18 U.S.C. § 1030(e)(6)*. The term "authorization" is not further defined "leaving courts to wrestle with the breadth of its meaning" as increasingly, employers attempt to use a statute originally designed to punish hackers against allegedly disloyal employees. *Dresser-Rand Co. v. Jones*, 957 F. Supp. 2d 610 (E.D. Pa. 2013) (Legislative history demonstrates that "[t]he

general purpose of the CFAA was to create a cause of action against computer hackers (e.g. electronic trespassers).")

Courts in the Eastern District of Pennsylvania have generally adopted a narrow interpretation of "without authorization". *Id.* at 616. "Under the narrow view, an employee given access to a work computer is authorized to access that computer regardless of his or her intent to misuse information." *Id.* at 615; see also, *Teva Pharmaceuticals USA, Inc. v. Sandhu*, 291 F.Supp.3d 659 (E.D.Pa. January 30, 2018).

Paragraph 97 of the Complaint admits that Mr. Orobono had access to Petrochoice's computer system through Microsoft 365. ("Although PetroChoice terminated Defendant's front-end Citrix access credentials…Defendant continued to utilize back-end access through Microsoft 365.") Although PetroChoice alleges it was not aware of this, the admission that Defendant did have access to Petrochoice's system through Microsoft 365 (and was not an outside hacker) takes Defendant's conduct out of the purview of the CFAA regardless of any allegation about Mr. Orobono's motives. *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 407 (E.D. Pa. 2009). ("…[A]n employee who may access a computer by the terms of his employment is "authorized" to use that computer for purposes of CFAA even if his purpose in doing so is to misuse or misappropriate the employer's information.") Defendant's access to the computer system by virtue of his consulting relationship with PetroChoice cannot constitute a violation of the CFAA.

Further, Plaintiff does not set forth requisite damages to sustain a claim under the CFAA. The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). It defines "loss" as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any

revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Id.* § 1030(e)(11).

Courts within the Third Circuit have held that to fall within the statutory definition of "loss," the alleged loss "must be related to the impairment or damage to a computer or computer system." *Advanced Fluid Systems, Inc. v. Huber*, 28 F.Supp.3d 306 (M.D. Pa. June 18, 2014). The CFAA's definition of loss includes lost revenue incurred because of an interruption of service, *see* 18 U.S.C. § 1030(e)(11), but does not include claims for lost business opportunities and other missed revenue opportunities. *Id.*, *citing*, *Advantage Ambulance Grp., Inc. v. Lugo*, No. 08–3300, 2009 WL 839085, at *3–4, 2009 U.S. Dist. LEXIS 26465, at *10–13 (E.D.Pa. Mar. 30, 2009) (dismissing claim prefaced on lost revenue due to dissemination of trade secrets accomplished by unauthorized access).

PetroChoice alleges only that it has been "damaged by Defendant's actions, including the loss of at least one large account and potential contracts due to the unfair competition and being forced to expend resources to investigate the unauthorized access and abuse of its computer equipment." Complaint at ¶ 163. Plaintiff further generally alleges it sustained irreparable and incalculable harm as a result of Defendant's action. Complaint at ¶ 164. Plaintiff does not allege damages as a result of an alleged interruption in service, or that there was an impairment or damage to a computer or computer system, or that Plaintiff itself did not have access to the information. Plaintiff's alleged loss of client revenue or cost for mere investigation are not damages available under the CFAA. *Id.* Plaintiff does not allege the requisite damages to sustain a claim.

Defendant Orobono was not an outside hacker, but a consultant with a username and password for PetroChoice's computer system through Microsoft 365. Further, PetroChoice has not

LAW OFFICES OF **LAMB McERLANE PC** • 24 EAST MARKET STREET • BOX 565 • WEST CHESTER, PA. 19381-0565

alleged the requisite damages necessary to sustain a claim under the CFAA. For these reasons, Plaintiff's claim for violation of the Computer Fraud and Abuse Act must be dismissed.

### B. The Gist of the Action Doctrine Bars Plaintiff's Claims for Breach of Duty of Loyalty and Tortious Interference.

As a general rule, Pennsylvania courts are cautious about permitting tort recovery on contractual breaches. *Glazer v. Chandler,* 414 Pa. 304, 200 A.2d 416, 418 (1964). In *eToll, Inc. v. Elias/Savion Adver., Inc.,* 811 A.2d 10 (Pa.Super.Ct.2002), the Pennsylvania Superior Court emphasized that the "gist of the action" doctrine "is designed to maintain the conceptual distinction between breach of contract claims and tort claims [by] preclud[ing] plaintiffs from recasting ordinary breach of contract claims into tort claims." *Id.* at 14.

The "gist of the action" doctrine prevents a plaintiff from bringing a tort claim that merely restates a breach of contract claim. *Werwinski v. Ford Motor Co.,* 286 F.3d 661 (3d Cir. 2002) (citing *Phico Ins. Co. v. Presbyterian Med. Serv. Corp.,* 663 A.2d 753, 757 (Pa. Super. 1995)). The doctrine bars tort claims: "(1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." *Brown & Brown,* 745 F.Supp.2d at 619–20 (internal quotation marks omitted). "In other words, if the duties in question are intertwined with contractual obligations, the claim sounds in contract, but if the duties are collateral to the contract, the claim sounds in tort." *Id.* Whether the gist of the action doctrine applies in any particular setting is a question of law. *Id.* at 620.

Plaintiff's claim for breach of duty of loyalty and both claims for tortious interference are subsumed by Plaintiff's three claims for breach of contract action and must be barred by the gist of the action doctrine.

8

### 1. The gist of the action doctrine bars Plaintiffs' claim for breach of duty of loyalty.

Count VII of Plaintiffs' Complaint, for breach of duty of loyalty must be dismissed from Plaintiffs' Complaint as it is barred by the "gist of the action" doctrine. When evaluating whether a breach of duty of loyalty claim is barred by the "gist of the action" doctrine, the inquiry is whether the obligations that plaintiff alleged were breached by defendant "were imposed 'as a matter of social policy' rather than 'by mutual consensus.'" *Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 105 (3d Cir. 2001) (*citing Redevelopment Auth. of Cambria County*, 685 A.2d 581, 590 (Pa. Super. 1996)). While courts may be wary to dismiss a broad claim of breach of fiduciary duty/duty of loyalty arising from generalized "acts and omissions" based on the "gist of the action" doctrine, where the duties arise expressly from an agreement between the parties, they may be barred. *See Orthovita, Inc. v. Erbe*, 2008 U.S. Dist. LEXIS 11088, **20-21 (E.D. Pa. Feb. 14, 2008).

Clearly, the gravamen of Plaintiff's breach of loyalty claim is a breach of contract action. Specifically, the sole count of the Complaint referencing any breach of duty of loyalty states:

- Plaintiff alleges Orobono breached his duty of loyalty to PetroChoice: "by using PetroChoice resources and information" to mislead Petrochoice; by "usurping business opportunities that PetroChoice had actual and expected interests in"; by "stealing confidential and proprietary information and trade secrets" for his benefit and the benefit of his employer. Complaint at ¶ 189

These are the same infractions Plaintiff alleges Defendant committed in breach of the three Agreements:

- Plaintiff alleges Defendant breached the Management Equity Agreement (Count IV), "by interfering with PetroChoice's relationship with JWT… accessing PetroChoice's cloud-based network, downloading confidential information and trade secrets…and disclosing the confidential information and trade secrets to his current employer, and likely others…" Complaint at ¶ 169.

- Plaintiff alleges Defendant breached the Separation Agreement and General Release (Count V), "through his access to confidential information and trade secrets contained on PetroChoice's cloud-based network and then disseminating the information…" Complaint at ¶ 176.

- Plaintiff alleges Defendant breached the Consulting Agreement (Count VI) by "using his position as a consultant to retrieve confidential information and trade secrets for his own benefit, and the benefit of his current employer…" Complaint at ¶ 183.

Plaintiff's Complaint does not allege a breach of any obligations in its claim for breach of duty of loyalty other than those set forth in the Agreements, which obligations arise from a "mutual consensus" and not "social policy." Indeed, there is no "social policy" prohibiting competition between individuals, and the restrictions against solicitation of Plaintiff's customers stems only from the contractual provisions in the Agreements. *See Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, No. 05-2296, 2006 U.S. App. LEXIS 6865, *11 (3d Cir. Mar. 8, 2006) (noting that there is no duty not to compete "imposed by law as a matter of social policy" and that only a contract can impose such a duty). Even the claim regarding misuse and dissemination of confidential information specifically are expressed within the obligations in the Agreements at issue.

"A breach of fiduciary duty claim is barred by the gist of the action doctrine if the fiduciary duty alleged is grounded in contractual obligations." *Alpart v. Gen. Land Partners, Inc.*, 574 F.Supp.2d 491, 499 (E.D. Pa. 2008). Plaintiff puts forth no allegations of breach of duty of loyalty that transcend or exist outside Orobono's obligations under the Agreements. *See Ginley v. E.B. Mahoney Builders, Inc., Edwin B. Mahoney*, No. CIV.A.04–1986, 2005 WL 27534, at *3 (E.D.Pa. Jan. 5, 2005) ("Because Plaintiffs' fiduciary duty claim arises directly from Defendants' failure to satisfy their contractual obligations, the 'gist of the action' plainly sounds in contract law, rather than tort."). Therefore, the gist of the action bars these allegations.

Accordingly, Count VII of Plaintiff's Complaint is barred by the "gist of the action" doctrine and must be dismissed.

### 2. The gist of the action doctrine bars both of Plaintiffs' tortious interference claims.

Counts VIII and IX of Plaintiff's Complaint assert causes of action for tortious interference with contractual and prospective contractual relations with JWT (Orobono's present employer) and PetroChoice's customers and prospective customers. As stated, where the obligations and duties alleged to have been violated are imposed by contract, and not by larger social policies, tort claims arising from a violation of those obligations and duties are barred by the "gist of the action" doctrine. *See Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 105 (3d Cir. Pa. 2001) (*citing Redevelopment Auth. of Cambria County*, 685 A.2d 581, 590 (Pa. Super. 1996)).

Here, Plaintiffs have brought a breach of contract claim against Orobono for, inter alia, interfering with PetroChoice's relationship with JWT (Complaint at ¶ 169), by interfering with "PetroChoice's relationship with JWT", which "violated numerous restrictive covenants to which [Defendant] agreed…" (Complaint at ¶ 86), and Defendant's "competitive endeavor…falls under the definition of 'Competing Business' as used in the Employment Agreement's Restrictive Covenants and incorporated in the Separation Agreement, and the definition of "Competitive Activity" in the Equity Agreement's Restrictive Covenants, which were also incorporated into Defendant's Separation Agreement with PetroChoice." (Complaint at ¶ 124).

Plaintiff then re-casts its multiple breach of contract claims as two additional and separate tort claims for tortious interference with Plaintiff's relationship with JWT and Plaintiff's relationship with its customers, and interference with prospective customers (See Counts VIII and IX).

When a defendant's breach of contract has the incidental consequence of affecting a plaintiff's business relationship, the action lies only in contract. *Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F. Supp. 813, 843 (E.D. Pa. 1993). Here, it is the express provisions of the Agreements between the parties - not social policies - that arguably impose a duty on Orobono not to compete with Plaintiff and interfere with Plaintiff's relationships with its customers. *See Chemtech Int'l, Inc. v. Chem. Injection Techs., Inc.*, No. 05-2296, 2006 U.S. App. LEXIS 6865, *11 (3d Cir. Mar. 8, 2006) (noting that there is no duty not to compete "imposed by law as a matter of social policy" and that only a contract can impose such a duty).

The terms of the Agreements at issue prohibit Orobono from competing with Plaintiff or soliciting Plaintiff's customers (Complaint at ¶¶ 40, 51, 52, 55, and 65). It is these provisions that are at the heart of Plaintiff's tortious interference claim. The "gist" of these claims properly sounds in contract, not tort, and accordingly Counts VIII and IX of Plaintiff's Complaint must be dismissed.

LAW OFFICES OF **LAMB McERLANE PC**   •   24 EAST MARKET STREET   •   BOX 565   •   WEST CHESTER, PA. 19381-0565

## V. CONCLUSION

In conclusion, for the reasons set forth herein, Defendant respectfully requests that this Court dismiss Counts III (Computer Fraud and Abuse Act), VII (Breach of Duty of Loyalty), VIII (Tortious Interference with Contract), and IX (Intentional Interference with Prospective Contractual Relations) for failure to state a claim upon which relief can be granted.

                                                  **LAMB McERLANE PC**

Date:  February 10, 2020          BY:  */s/Mary-Ellen H. Allen*
                                                                Joel L. Frank
                                                                I.D. No. 46601
                                                                Mary-Ellen H. Allen
                                                                I.D. No. 83885
                                                               24 East Market Street
                                                                Post Office Box 565
                                                                West Chester, PA  19381-0565
                                                                610-430-8000
                                                                jfrank@lambmcerlane.com
                                                                mallen@lambmcerlane.com

                                                              *Attorneys for Defendant*

## CERTIFICATE OF SERVICE

This is to certify that in this case complete copy of the foregoing Defendant's Partial Motion to Dismiss with Supporting Memorandum of Law has been filed electronically and is available for viewing and downloading from the ECF system. This document is being served upon the following counsel by electronic filing and service procedures:

| Name | Means of Service | Date of Service |
|---|---|---|
| Steven D. Urgo, Esquire<br>Jon J. Olafson, Esquire<br>Kayla D. Dreyer, Esquire<br>Lewis Brisbois Bisgaard & Smith<br>550 E. Swedesford Road, Suite 270<br>Wayne, PA 19087 | Electronic Filing | February 10, 2020 |

**LAMB McERLANE PC**

Date: February 10, 2020     BY: *s/Mary-Ellen H. Allen*
　　　　　　　　　　　　　　　　Joel L. Frank
　　　　　　　　　　　　　　　　I.D. 46601
　　　　　　　　　　　　　　　　Mary-Ellen H. Allen
　　　　　　　　　　　　　　　　I.D. No. 83885
　　　　　　　　　　　　　　　　24 East Market Street
　　　　　　　　　　　　　　　　Post Office Box 565
　　　　　　　　　　　　　　　　West Chester, PA  19381-0565
　　　　　　　　　　　　　　　　610-430-8000
　　　　　　　　　　　　　　　　jfrank@lambmcerlane.com
　　　　　　　　　　　　　　　　mallen@lambmcerlane.com