IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PETROCHOICE HOLDINGS, INC.                  :
                 Plaintiff,                  :      <u>CIVIL ACTION</u>
                                    :

    - against -                                :      No. 19-6152-JMG

FRANCIS S. OROBONO, JR.,                     :
                                      :
               Defendant.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - :
                                      x

**PETROCHOICE HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

I.    **INTRODUCTION**................................................................................................... 2

II.   **LEGAL STANDARD**.............................................................................................. 3

III.  **ARGUMENT**...................................................................................................... 3

   A.    PetroChoice is Entitled to Judgment as to its Trade Secrets Claims .............................. 3

     1.   PetroChoice possesses valid trade secrets.......................................................... 5

     2.   Defendant Misappropriated ACT's Trade Secrets................................................ 8

     3.   Defendant Knew the Trade Secrets Were Taken Using Improper Means..................... 10

   B.    PetroChoice is Entitled to Judgment on its Breach of Contract Claims ........................ 11

     1.   Management Equity Agreement...................................................................... 11

     2.   Separation Agreement. ............................................................................... 15

     3.   Consulting Agreement. ............................................................................... 17

   C.    PetroChoice is Entitled to Judgment as to its Unjust Enrichment Claim ...................... 18

IV.  **Conclusion**..................................................................................................... 19

PetroChoice Holdings, Inc. ("PetroChoice"), by and through its undersigned attorneys, hereby submit this Motion for Summary Judgment, and states as follows:

## I.   INTRODUCTION

This is a straightforward, textbook trade secrets theft, breach of contract, and unlawful competition case that involves the wrongful and illegal misappropriation of PetroChoice's trade secrets by its former employee and former independent contractor, as well as his violation of numerous restrictive covenants to which he agreed. Defendant engaged in this highly improper conduct on the eve of the termination of his independent-contractor relationship, and immediately after he became employed by Jack Williams Tire, Inc. ("JWT"), a long-standing and important PetroChoice client. Not coincidentally, Defendant also initiated the development of an ancillary-sales division within the JWT sales department competitive with PetroChoice. Ultimately, Defendant Francis "Fran" Orobono, Jr. gained unauthorized and wrongful access to PetroChoice's computer network to steal and misappropriate PetroChoice's trade secrets and confidential and proprietary information to wrongfully, unlawfully, and unfairly compete with PetroChoice.

Defendant's wrongful actions resulted in, among other things, (a) the loss of at least one of PetroChoice's largest accounts (that included distribution to six automotive dealerships) and related revenue; (b) the transformation of JWT into a direct competitor, which resulted in significant lost business and revenue; and (c) significant economic and reputational damages to PetroChoice. PetroChoice asserted various claims under federal and state law in an effort to rectify the wrongs committed by Defendant. PetroChoice now moves for summary judgment on its trade secrets, breach of contract, and unjust enrichment claims.[1]

---

[1] PetroChoice has filed a separate Statement of Undisputed Facts pursuant to this Court's "Policies and Procedures." (Dkt. No. 57-1.) PetroChoice respectfully requests that the Court read this Motion in tandem with its Motion for Sanctions (Dkt. No. 56). For this reason, the supporting exhibits to the Motion for Spoliation is included in PetroChoice's Appendix.

## II.    LEGAL STANDARD

Summary judgment is considered to be "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Id*.

While a court must view evidence in the light most favorable to the non-movant and may not resolve issues of credibility, the evidence must be based on more than mere conjecture, speculation, or subjective belief. *See Jackson v. Danberg*, 594 F.3d 210, 227 (3d Cir. 2010). Essentially, the inquiry for the Court is to decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). To wit, when the evidence is merely colorable or not significantly probative, then summary judgment is appropriate. *Id*. at 249–50.

## III.    ARGUMENT

A. PetroChoice is Entitled to Judgment as to its Trade Secrets Claims

PetroChoice is entitled to judgment as to its Defend Trade Secrets Act ("DTSA") and Pennsylvania Uniform Trade Secrets ("PUTSA") claims because PetroChoice can satisfy all of the elements under those statutes. Specifically, PetroChoice owns trade secrets; it used "reasonable

means" to secure its trade secrets; the information derives actual or potential "independent and economic value" from being secret; the information is not "readily ascertainable by proper means"; and others, who cannot access the information, would derive "economic value from its disclosure or use." *See Herley Indus. v. R Cubed Eng'g, LLC.*, No. 20-cv-02888, 2020 U.S. Dist. LEXIS 206880, at *12–14 (E.D. Pa. Nov. 5, 2020). Defendant misappropriated PetroChoice's trade secrets when he wrongfully downloaded files from PetroChoice's secured system on the eve of his independent contractor term in violation of multiple restrictive covenants, contracts, and the law. (PetroChoice's Statement of Undisputed Facts ("SUF") ¶ 77.) Furthermore, Defendant continues to retain those files in violation of his agreements, and he could not account for all of the materials or has wrongfully withheld same from PetroChoice in this dispute. (SUF ¶ 93.)

The DTSA creates a private cause of action in favor of the "owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Under the DTSA, a trade secret includes:

> . . . all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if—
> (A) the owner thereof has taken reasonable measures to keep such information secret; and
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]

18 U.S.C. § 1839(3).

Similarly, a PUTSA violation consists of the following elements: "(1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret, in violation of that confidence; and (4) harm to the plaintiff." *Moore v. Kulicke*

*& Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003); *see Herley Indus. v. R Cubed Eng'g. LLC*, Case No. 5:20-cv-02888, 2021 U.S. Dist. LEXIS 11949, at *11 (E.D. Pa. Jan. 22, 2021) ("The standard for 'misappropriation' applicable to the present case is identical under both the DTSA and PUTSA. *See* 18 U.S.C. § 1839(5)(B); 12 Pa. Cons. Stat. § 5302(2)[.]").

      1.     <u>PetroChoice possesses valid trade secrets.</u>

First, PetroChoice possesses and has developed valid trade secrets. Pursuant to the DTSA, the term "trade secret" includes "all forms and types of financial, business, scientific, technical, economic, or engineering information" that (A) the owner has taken reasonable measures to keep secret and (B) "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use." 18 U.S.C. § 1839(3)(A) and (B).

Similarly, "trade secret" under the PUTSA means:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

12 Pa. Cons. Stat. § 5302 (2021).

The categories of material that PetroChoice claims to be protected trade secrets include its (1) confidential price and program information; (2) information about chemical companies distributed by PetroChoice; (3) information about PetroChoice's financial condition and performance, such as profit-loss statements and historical sales and strategy data; (4) customer lists and customer relationship management data; and (5) PetroChoice's methods and procedures for its chemical distribution business. (SUF ¶ 78.)

Defendant had a duty to keep PetroChoice's confidential information and trade secrets

intact and not to use, exploit, or disclose such information other than for the benefit of PetroChoice. Exhibit 1, Attachments A–D. Despite this, Defendant knowingly and willfully acquired, disclosed, and currently exploits for his own and his current employer's economic advantage, PetroChoice's confidential information and trade secrets. (SUF ¶ 77.) This includes, but not limited to, confidential price and program information; information about chemical companies distributed by PetroChoice and the business relationship; information about PetroChoice's financial condition and performance, such as profit-loss statements and historical sales data; customer lists and customer relationship management (CRM) data; and PetroChoice's methods and procedures for carrying out its chemical distribution business. (SUF ¶ 78.)

This information is not common knowledge to anyone outside of PetroChoice. (SUF at Ex. 1, Walker Decl. ¶¶ 58–60.) It is highly valuable to PetroChoice and would provide competitors, which now specifically includes, but is not limited to JWT, with an unfair competitive advantage over PetroChoice. (SUF at Ex. 1, Walker Decl. ¶ 74.) These categories of material likewise fall squarely within the definition of "Proprietary Information" that Defendant agreed to protect pursuant to the Employment Agreement. (SUF ¶ 78.) These materials are textbook examples of "trade secret" pursuant to both the DTSA and the PUTSA.

"The crucial indicia for determining whether certain information constitutes a trade secret are substantial secrecy and competitive value to the owner." *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063, 1070 (Pa. Super. Ct. 2003). "Moreover, courts have afforded greater protection to the compilation of [pricing] information— its aggregation and organization into the spreadsheets where the compilation of information is not readily obtainable from publicly available sources." *Freedom Medic. Inc. v. Whitman*, 343 F. Supp. 3d 509, 519 (E.D. Pa. 2018) (internal citations omitted); *Amerisourcebergen Drug Corp. v. Am. Associated Druggists, Inc.,* 2008 U.S. Dist. LEXIS 6611, at *25

(E.D. Pa. Jan. 29, 2008); *Nat'l. Risk Mgmt., Inc. v. Bramwell*, 819 F. Supp. 417, 430–31 (E.D. Pa. 1993) (holding that customer information, such as cost and price information, compiled by a business represents a material investment of time and money and constitutes a valuable asset).

It would take a considerable amount of time, effort, and expense to duplicate this information without access to PetroChoice's confidential information and trade secrets. (SUF at Ex. 1, Walker Decl. ¶ 59.) Indeed, it took a substantial amount of time to compile the information wrongfully possessed by Defendant. PetroChoice's business advantage and value that it has earned through development of its trade secrets would be lost if the confidential information and trade secrets became known to PetroChoice's competitors, including but not limited to JWT. (SUF at Ex. 1, Walker Decl. ¶ 74.)

In addition, PetroChoice has made considerable legally recognized efforts to prevent disclosure of its confidential information and trade secrets. One reasonable measure that a trade secret owner can take to keep its trade secrets secret is to have employees sign confidentiality agreements. *Gov't Emps. Ins. Co. v. Nealey*, 262 F. Supp. 3d 153, 168–71 (E.D. Pa. 2017) (confidentiality agreements and restricting access); *Par Pharm., Inc. v. QuVa Pharma, Inc.,* 764 Fed. App'x 273, 278 (3d Cir. 2019). Much like the methods approved by Pennsylvania courts and the Third Circuit, PetroChoice limits access to confidential information and trade secrets to employees on a need-to-know basis and requires credentials before the confidential information and trade secrets can be accessed. (SUF at Ex. 1, Walker Decl. ¶ 59.) PetroChoice also asks its employees to execute confidentiality and non-disclosure agreements as a condition of employment. (SUF at Ex. 1, Attachments A–D.) Furthermore, PetroChoice maintains a secured password-protected network. (SUF at Ex. 1, Walker Decl. ¶ 56.) The information Defendant, without authorization, misappropriated, were and are valuable trade secrets and were properly

protected.  (SUF ¶ 83.)

## 2.   Defendant Misappropriated ACT's Trade Secrets.

The DTSA and PUTSA define misappropriation as "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "disclosure or use of a trade secret of another without express or implied consent." *Magnesita Refractories Co. v. Tianjin New Century Refractories Co.*, No. 1:17-CV-1587, 2019 U.S. Dist. LEXIS 32559, at \*23 (M.D. Pa. Feb. 28, 2019) (quoting 18 U.S.C. § 1839(5)(A); 12 Pa. Cons. Stat. § 5302). Under Pennsylvania law, the prima facie elements of the tort of misappropriation of a trade secret are:

(1) the existence of a trade secret;
(2) communication of the trade secret pursuant to a confidential relationship;
(3) use of the trade secret, in violation of that confidence; and
(4) harm to the plaintiff.

*Moore v. Kulicke & Soffa Indus.*, 318 F.3d 561, 566 (3d Cir. 2003).

There is no dispute that during the consultancy period, Defendant wrongfully and without authorization, as required by agreement, accessed and removed PetroChoice's confidential information and trade secrets from PetroChoice's cloud-based computer network in violation of the restrictive covenants contained in various contractual agreements he has with PetroChoice.[2] (SUF ¶ 77.) Defendant took the confidential information and trade secrets for the benefit of himself and his new employer and retained those documents allegedly on his JWT Laptop. *Id*. Defendant then provided his new employer with the benefit of PetroChoice's confidential pricing and program information related to its distribution of chemicals, amongst other confidential

---

[2] PetroChoice has provided a list of the file names misappropriated by Defendant (Dkt. No. 56-3–4) but not the documents themselves given their numerosity. PetroChoice will produce these to the Court for the Court's and Defendant's review in connection with this Motion if it would be helpful in disposing of same.

information and trade secrets, so he could enter the chemical distribution market in his new employment role. (SUF ¶¶ 82, 83.) This was a sales area with which he was already very familiar.

Thus, Defendant has wrongfully and knowingly possessed, acquired, and used Plaintiff's properly protected trade secrets. At the time of acquisition, possession, and use, Defendant knew or had reason to know that Plaintiff's trade secrets were acquired by improper means because PetroChoice terminated his front-end access credentials and Defendant knew the trade secrets and confidential information were not intended to be shared with any person or entity. (SUF ¶¶ 72–73; Ex. 1, Walker Declaration ¶¶ 58, 59.) In addition, Plaintiff knew, by virtue of his Severance Agreement, he was not allowed to access any PetroChoice material without express permission. (Ex. 1, Attachments A–D.) Moreover, Defendant had a contractual duty to protect and return PetroChoice's confidential information. Despite this duty, Defendant systematically took and used the information for his own purposes and in order to compete with PetroChoice. *See Stratasys, Inc.*, 2018 U.S. Dist. LEXIS 82138, at *6–7.

In addition, at the time of possession, acquisition, and use of PetroChoice's trade secret and confidential information, Defendant had no legitimate business use for such information to benefit PetroChoice or to complete any assignment on behalf of PetroChoice. (SUF ¶ 75.) The mass download event occurred at the end of the consultancy period, all without written authorization from PetroChoice. (SUF ¶ 77.) There was no legitimate or authorized purpose for Defendant to possess or retain any PetroChoice information generally, and PetroChoice confidential information and trade secrets specifically, following the end of his working relationship with PetroChoice. *Id*.

Of most concern, despite great expense undertaken by PetroChoice in this matter, has failed to uncover the downloaded files and Defendant claims to have no knowledge of their whereabouts. (*See*

*generally* Dkt. No. 56.) The Court may reasonably infer that Defendant retains PetroChoice's confidential and proprietary information and trade secrets so he can utilize them to compete with PetroChoice. (*See, e.g.,* SUF ¶ 93.)

All of the foregoing constitutes "misappropriation" under both the DTSA and the PUTSA.

       3.    <u>Defendant Knew the Trade Secrets Were Taken Using Improper Means.</u>

Defendant knew he was engaging in improper means to obtain PetroChoice's trade secrets as his regular access to PetroChoice's cloud-based computing system ceased and instead he figured out how to gain access through the "back door." (SUF ¶ 72.) Not only does common sense dictate that Defendant knew he could not abscond with confidential information, but the multiple non-disclosure provisions to which he agreed contractually prohibited him from possession of PetroChoice's property and trade secrets without authorization. (Ex. 1, Attachments A–D.)

In sum, PetroChoice has material evidence that demonstrates Defendant's misappropriation of trade secrets in violation of the DTSA and PUTSA, and therefore, is entitled to judgment in its favor. PetroChoice asks the Court to not only order judgment in its favor in connection with its DTSA and PUTSA claims, but to also find that Defendant's conduct was willful and malicious. While the DTSA does not define "willful and malicious," PUTSA does:

> Such intentional acts or gross neglect of duty as to evince a reckless indifference of the rights of others on the part of the wrongdoer, and an entire want of care so as to raise the presumption that the person at fault is conscious of the consequences of his carelessness.

12 Pa. Cons. Stat. Ann. § 5302.

Defendant knew he did not have authorization to access PetroChoice's computer system as he asked several PetroChoice managers who did not have authority to grant this access, for direct access and was denied. (SUF ¶ 74.) In spite of this Defendant continued to try to access the system via the back door multiple times. (SUF ¶ 81.) Further, he was under contractual obligations not to

take or retain PetroChoice's property and did so regardless. (Ex. 1, Attachments A–D.) Defendant's conduct since August, 2019 demonstrates he acted with reckless indifference and gross negligence in connection with PetroChoice's property and with entire want of care, and therefore PetroChoice requests the Court find as such and order an award of its attorney fees as well as exemplary damages.

      B.   <u>PetroChoice is Entitled to Judgment on its Breach of Contract Claims</u>

Next, PetroChoice moves the Court to grant judgment as to its three breach of contract claims. To succeed under a breach of contract claim, PetroChoice must prove the following elements: (1) existence of a contract (2) breach of the duty imposed by the contract; (3) damages resulting from breach. *McCabe v. Marywood Univ.*, 2017 PA Super 229, 166 A.3d 1257, 1262. PetroChoice has raised breach of contract claims in connection with the Management Equity Agreement, Separation Agreement, and Consulting Agreement, and will address each agreement below in detail. Any judgment in favor of PetroChoice as to any of these breach of contract claims entitle it to its fees and costs, in addition to other contractual remedies contained therein. (SUF, Ex. 1, Attachments A § 5.13, B § 8(g), § 10(g).)

      1.   <u>Management Equity Agreement.</u>

On or about April 11, 2016, Defendant signed and executed a Management Equity Agreement with Stryker. PetroChoice, as subsidiary of Stryker and third-party beneficiary to the Management Equity Agreement, has proper standing to seek all relief permissible for Plaintiff's breaches of the agreement. (SUF ¶ 35; SUF, Ex. 1 Attachment C.) In Section 6 of the Management Equity Agreement, Defendant agreed to certain restrictive covenants that he intentionally and deliberately breached. (SUF ¶ 39.)

Specifically, through his unlawful actions, described in detail in the Statement of Undisputed Facts, Defendant breached Sections 6.a. (Confidentiality), 6.b. (Noncompete), 6.c.

(Nonsolicitation and Noninterference), 6.d. (Nondisparagement), and 6.f. (Return of Company Property) by interfering with PetroChoice's relationship with JWT, which was not a competitor prior to Defendant's interferences; accessing PetroChoice's cloud-based network without authorization; downloading and retaining confidential information and trade secrets without authorization; and disclosing the confidential information and trade secrets to his current employer, to PetroChoice's detriment, by allegedly downloading those materials onto his JWT Laptop. (SUF ¶¶ 62–99.) PetroChoice has been damaged at a minimum, through its loss of its customer the Kennedy Group. (SUF ¶ 91.)

PetroChoice anticipates that Defendant will respond that he did not breach the restrictive covenants (especially not the non-competition restriction) because they are invalid and unenforceable under Pennsylvania law. The Equity Agreement contains a "Noncompetition" provision. (SUF ¶¶ 43–45.) The Equity Agreement further defines "Competitive Business" as "the Business or any other business engaged in by the Company or any of its Subsidiaries as of the Termination Date." (SUF ¶ 45.)

Defendant established a competing endeavor by the establishment and management of a chemical-sales division within JWT in violation of the noncompetition clause contained in the Equity Agreement. (SUF ¶ 85.) Defendant's sale of Wynn's chemical products falls squarely within the definition of "Competitive Activity" in the Equity Agreement's Restrictive Covenants. *Id.*

Pennsylvania common law has treated restrictive covenants as restraints on trade that are void as against public policy unless they are ancillary to an otherwise valid contract. *Pittsburgh Logistics Sys. v. Beemac Trucking, LLC*, No. 31 WAP 2019, 2021 Pa. LEXIS 1853, at *39 (Apr. 29, 2021). To determine the enforceability of a provision in restraint of trade that is ancillary, or

supplementary, to the principal purpose of a contract, courts employ a balancing test to determine the reasonableness of the restraint in light of the parties' interests that the restraint aims to protect and the harm to other contractual parties and the public. *See Hess v. Gebhard & Co.*, 808 A.2d 912, 917–18 (Pa. 2002).

At a minimum, for a non-competition or restrictive covenant to be enforceable, it must be "reasonably related to the protection of a legitimate business interest." *Wellspan Health v. Bayliss*, 2005 PA Super 76, ¶ 17, 869 A.2d 990, 996 (quotation omitted). The type of interests that have been recognized in the context of a non-competition covenant include trade secrets or confidential information, unique or extraordinary skills, customer good will, and investments in an employee specialized training program. *Id*. Thus, the presence of a legitimate, protectable business interest of PetroChoice is a threshold requirement for an enforceable non-competition covenant. *Id*. In this case, the protectable interest test is met, because the non-competition restriction is directly tied to both customer goodwill and the protection of PetroChoice's trade secrets and confidential information. (SUF ¶ 43.)

The next step in the Court's analysis of a non-competition covenant is to apply the balancing test defined by the Pennsylvania Supreme Court. *See Hess* , 808 A.2d at 920. The test requires the Court to balance PetroChoice's protectable business interest against Defendant's interest in earning a living, and then those interests with the interests of the public. *Id*. In weighing the competing interests of employer and employee, the court must engage in an analysis of the reasonableness of the temporal and geographical restrictions imposed by the non-compete, which must be reasonably limited. *Id*. at 917. The determination of reasonableness is a factual one, requiring consideration of all the facts and circumstances, with the party claiming

unreasonableness as a defense against enforcement of the covenant bearing the burden of proof. *Wellspan Health*, 2005 PA Super 76, ¶ 28.

The noncompete provision contained in the Management Equity Agreement is limited to 24 months, a term, which has been held to be reasonable by Pennsylvania courts. *See, e.g., Sidco Paper Co. v. Aaron*, 351 A.2d 250, 260 (Pa. 1976); *Bettinger v. Carl Berke Assocs., Inc.*, 314 A.2d 296 (1974). The non-competition clause is narrowly drawn to protect PetroChoice's legitimate business interests. (SUF ¶ 43.) Moreover, Defendant could have obtained non-prohibitive employment—he just chose to ignore his obligations and initiate a new sales division in spite of them. Even if the Court does not agree the temporal and geographic scope of the restrictive covenant is reasonable, it is well-established in Pennsylvania that a court has the authority to reform a non-competition covenant in order to enforce only those provisions that are reasonably necessary for the protection of the employer. *See Hess,* 808 A.2d at 920; *Sidco*, 351 A.2d at 255 n.8.

Finally, the public has a substantial interest in the enforcement of noncompetition covenants. *AmQuip Crane Rental, LLC v. Crane & Rig Servs.*, 2018 PA Super 315, 199 A.3d 904, 918. Doing so discourages "unfair competition, the misappropriation and wrongful use of confidential information and trade secrets, and the disavowal of freely contracted obligations." *Quaker Chem. Corp. v. Varga,* 509 F. Supp. 2d 469, 481 (E.D.Pa. 2007). Thus, the balancing test weighs in PetroChoice's favor in light of the facts at issue here.

As a final matter, the Statement of Undisputed Facts demonstrate that Defendant's actions were committed knowingly, willfully, and in conscious disregard of Plaintiff's rights. Accordingly, PetroChoice requests a finding that such is the case and an award of actual and exemplary damages.

*Janusey v. Grose*, Nos. 208 WDA 2019, 2019 Pa. Super. Unpub. LEXIS 4394, at \*14 (Nov. 26, 2019).

        2.    <u>Separation Agreement.</u>

Defendant also breached the Separation Agreement in multiple ways. (SUF ¶¶ 51–99.) On or about September 6, 2018, Defendant and Plaintiff signed and executed a Separation Agreement and General Release. (SUF ¶ 52.) In Sections 9 and 10 of the Separation Agreement and General Release, Defendant agreed to certain restrictive covenants, which he subsequently intentionally and deliberately breached. (SUF ¶ 57.)

Specifically, Defendant breached Section 9 (Return of Property and No Access to Systems) and Section 10 (Confidentiality, Non-Compete, Non-Solicitation, and Non-Disparagement) through his access to confidential information and trade secrets contained on PetroChoice's cloud-based network and then disseminating the information to his current employer, and likely others, to PetroChoice's detriment. (SUF ¶ 77.) He also accessed PetroChoice's computer systems without prior written approved as approved as required by the Separation Agreement. Moreover, he has still failed to return the material that he stole. (SUF ¶ 93.)

The Separation Agreement also incorporated Defendant's Employment Agreement's Restrictive Covenants, as well as the definition of "Competitive Activity" contained in the Equity Agreement. (SUF ¶¶ 57, 18, 17, 19.) Moreover, the Separation Agreement states, in part:

> If you enter into the Consulting Agreement . . . you agree that the Restrictive Covenants shall continue to remain in force during the term of the Consulting Agreement in the same manner had you continued your employment with the Company and, upon the termination of the Consulting Agreement for any reason, shall apply in the post-consulting period in the same manner and for the same time-period as they would have applied upon a termination of employment.

(SUF ¶ 60.) It is undisputed that Defendant entered into the Consulting Agreement, and therefore the Restrictive Covenants did not begin to run until the end of the consultancy period. (SUF ¶ 58.)

Defendant violated the non-competition restrictions incorporated through the Separation Agreement when he assisted in the establishment of the chemical-sales division within JWT. (SUF ¶ 85.) Defendant's sale of Wynn's chemical products to PetroChoice's established customers falls squarely within the definition of "Competing Business" as defined above, and the activity was within the 24-month restrictive period and took place in the restricted territories within Pennsylvania.  (SUF ¶¶ 83–85.)

The noncompete provision incorporated through the Separation Agreement is limited to 24 months and by sales territories. (SUF ¶ 17.) Again, these are terms which have been held to be reasonable by Pennsylvania courts. *See, e.g., Sidco*, 351 A.2d at 260; *Bettinger*, 314 A.2d at 298. The non-competition clause is narrowly drawn to protect PetroChoice's legitimate business interests, as it is directly tied to the protection of PetroChoice's confidential information and trade secrets. (SUF ¶ 17.) Again, Defendant could have looked for lawful employment without running afoul of the restrictive covenants but deliberately began pursuing a competing endeavor. *Id.* Should the Court find the temporal and geographic scope of the restrictive covenant to be unreasonable, PetroChoice would ask the Court to reform the covenant in order to enforce only those provisions that are reasonably necessary for the protection of the PetroChoice. *See Hess.*, 808 A.2d at 920; *Sidco*, 351 A.2d at 255  n.8.

Finally,  Defendant also agreed that he would not access any PetroChoice materials without written permission by PetroChoice. (SUF ¶¶ 55–56.) Specifically,  the Separation Agreement unambiguously states that "You further agree not to enter any premises of the Company Group or access any of its phone, computer, electronic or other systems without the express written prior permission of the Company's chief executive officer or Board of Directors." *Id.* Defendant wrongfully  and in violation  of the Separation Agreement accessed PetroChoice's computer and

electronic systems without express written prior permission from PetroChoice's Chief Executive Officer or Board of Directors on August 24, 2019. (SUF ¶¶ 73–77.)  Not only did Defendant wrongfully access PetroChoice's computer and electronic system on this date, he wrongfully and without authorization downloaded PetroChoice's materials. *Id*. Defendant's August 24, 2019 wrongful access of PetroChoice's computer and electronic system is a clear breach of the Separation Agreement. (SUF ¶¶ 55, 56, 73, 77.)

For the above reasons, PetroChoice is entitled to judgment in its favor that Defendant has breached the Separation Agreement, Further, in light of the facts set forth in the Statement of Undisputed Facts, the Court should make a finding that Defendant's breach was committed knowingly, willfully and in conscious disregard of PetroChoice's rights, especially given that Defendant voluntarily entered into the Separation Agreement and then began breaching it within a year. *Janusey* , 2019 Pa. Super. Unpub. LEXIS 4394, at *14.

### 3.    Consulting Agreement.

PetroChoice also asks for judgment in its favor in connection with the breach of the Consulting Agreement. On or about September 6, 2018, Defendant and PetroChoice signed and executed a Consulting Agreement, which was included as Exhibit A to the Separation and General Release Agreement. (SUF ¶ 58.) Defendant owed a duty to Plaintiff to abide by the implied covenant of good faith and fair dealing which, by operation of law, is embodied in the Consulting Agreement. *See Goldstein v. Elk Lighting, Inc.*, 2013 U.S. Dist. LEXIS 30569 (M.D. Pa. Mar. 4, 2013). Defendant breached the covenant of good faith and fair dealing in numerous instances, including but not limited to using his position as consultant to retrieve confidential information and trade secrets for his own benefit and the benefit of his current employer, JWT, without authorization of PetroChoice, to the detriment of PetroChoice. Defendant's actions have, among

other things, deprived PetroChoice of its rights and benefits under the Consulting Agreement and are contrary to the spirit and intent of the Consulting Agreement. As a direct result of Defendant's wrongdoing, PetroChoice has been damaged by, among others, its loss of the Kennedy Group customer, and theft of its property. (SUF ¶¶ 62–99.)

Again, the evidence demonstrates that Defendant's actions were committed knowingly, willfully, and in conscious disregard of Plaintiff's rights. *Janusey*, 2019 Pa. Super. Unpub. LEXIS 4394, at *14. Defendant knew he did not have authorization to access PetroChoice's computer system as he asked several PetroChoice managers for direct access and was denied. (SUF ¶ 73.) In spite of this Defendant continued to try to access the system via the back door multiple times. (SUF ¶ 81.) Further, he was under contractual obligations not to take or retain PetroChoice's property and did so regardless. (SUF ¶¶ 55, 93.) He also entered into the Consulting Agreement and then immediately began setting up a competing division for his new employer. (SUF ¶¶ 61, 85.) PetroChoice thus requests judgment in its favor that the Consulting Agreement was breached knowingly, willfully, and in conscious disregard of its rights

C. PetroChoice is Entitled to Judgment as to its Unjust Enrichment Claim

Last, PetroChoice moves the Court for judgment on its unjust enrichment cause. The elements of a claim for unjust enrichment are:

(1) Benefits conferred on defendant by plaintiff;

(2) Appreciation of such benefits by defendant; and

(3) Retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

*Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 419 (E.D. Pa. 2006) (quoting *Schenck v. K.E. David, Ltd.*, 446 Pa. Super. 94, 666 A.2d 327, 328 (Pa. Super. 1995)). PetroChoice satisfies all of these elements.

First, PetroChoice offered Defendant a severance package, which included a monetary sum and a one-year consulting agreement. (SUF ¶¶ 58.) The severance package provided Defendant the opportunity to earn up to $160,416.67. *Id*. In exchange, Defendant agreed to comply with the restrictive covenants outlined therein. (SUF ¶ 59.) Defendant appreciated the benefits PetroChoice offered him under the Separation Agreement and accepted both the monetary amount and consulting agreement. (SUF ¶ 58.)

Defendant breached the incorporated Separation Agreement's restrictive covenants, but still retains the consideration and the monetary amounts paid under the consulting agreement. (SUF ¶¶ 58, 62–99.) Defendant's retention and enjoyment of the severance package, in light of his intentional breaches of the Separation Agreement's restrictive covenants, frustrate the principles of equity, and it would be inequitable for Defendant to retain the amounts paid by PetroChoice without repayment.

As a direct result of Defendant's wrongdoing, he has been unjustly enriched at PetroChoice's expense in an amount to be determined at trial, but which cannot be compensated by money alone. Moreover, Defendant's actions were committed knowingly, maliciously, willfully and in conscious disregard of PetroChoice's rights. Accordingly, PetroChoice is entitled to recover actual and exemplary damages. For these reasons, judgment must be rendered in PetroChoice's favor as to this claim.

### IV.    Conclusion

For the reasons set forth above, PetroChoice requests that the Court immediately order the following:

    a.  Judgment in PetroChoice's favor against Defendant Orobono as to the DTSA, PUTSA, breach of contract, and unjust enrichment claims;

b.  A finding that Defendant's misappropriation of PetroChoice's trade secrets was willful and malicious and an award of exemplary damages and attorney fees pursuant to 18 U.S.C. § 1836(b)(3)(C) & (D) and 12 Pa. Cons. Stat. Ann. § 5304(b) and pre- and post-judgment interest;

c.  A finding that Defendant breached the Management Equity Agreement, Separation Agreement, and Consulting Agreement;

d.  A finding that Defendant's breaches of the Management Equity Agreement, Separation Agreement, and Consulting Agreement were willful and malicious and PetroChoice is entitled to an award of exemplary damages;

e.  An award of PetroChoice's reasonable costs;

f.  Permit PetroChoice to file an application for damages, its reasonable attorneys' fees and costs; and

g.  Award PetroChoice all such further and other relief that is just and adequate.

Dated this 1st day of June, 2021.

Respectfully Submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ Kayla Dawn Dreyer
    Steven D. Urgo, ID No. 62773
    550 E. Swedesford Road, Suite 270
    Wayne, Pennsylvania 19087
    Telephone: 215.977.4078
    steven.urgo@lewisbrisbois.com

    Jon Jay Olafson
    1700 Lincoln Street, Suite 4000
    Denver, CO 80203
    Telephone: 303.861.7760
    Jon.Olafson@lewisbrisbois.com

    Kayla Dawn Dreyer
    1700 Lincoln Street, Suite 4000
    Denver, CO 80203

Telephone: 303.861.7760
Kayla.Dreyer@lewisbrisbois.com

*Attorneys for Plaintiff PetroChoice Holdings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of June, 2021, the undersigned served the foregoing PetroChoice Holdings, Inc.'s Motion for Summary Judgment upon counsel via ECF:

Joel L. Frank
Lamb McErlane PC
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565
jfrank@lambmcerlane.com

Mary-Ellen H. Allen
Lamb McErlane PC
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565
mallen@lambmcerlane.com
mallen@chescolaw.com

/s/      *Kayla Dawn Dreyer*
    *A duly signed original is on file at the*
    *Law Offices of LEWIS BRISBOIS*