**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ——————————————— | : | |
| PETROCHOICE HOLDINGS, INC. | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO.:  19-6152 |
| FRANCIS S. OROBONO, JR. | : | |
| Defendant. | : | |
| ——————————————— | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2021, upon consideration of Plaintiff's Motion for Summary Judgment and Defendant's response thereto, it is hereby ORDERED AND DECREED that Plaintiff's Motion is DENIED with prejudice.

BY THE COURT:

_____
The Honorable John M. Gallagher          J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PETROCHOICE HOLDINGS, INC. | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| FRANCIS S. OROBONO, JR. | : |
| Defendant. | : |
| | : |

:                  CIVIL ACTION

:                  NO.:  19-6152

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Defendant, Francis S. Orobono, Jr. ("Defendant" or "Orobono"), by and through his attorneys, Lamb McErlane PC, hereby files this Response to Plaintiff's Motion for Summary Judgment as follows:

**I.      INTRODUCTION**

Defendant Fran Orobono, Jr. is not engaged in competitive activity with Plaintiff PetroChoice Holdings, Inc. ("PetroChoice"), has not utilized any information that belongs to PetroChoice in any capacity since he completed his employment and consultancy with PetroChoice, has not solicited any of PetroChoice's customers for the purpose of selling competing products, and has not caused any of PetroChoice's alleged damages.

First, PetroChoice seeks summary judgment on its claims pursuant to the Pennsylvania Uniform Trade Secrets Act (12 Pa.C.S.A. § 5301, *et seq.* (2004)) ("PUTSA") and the Defend Trade Secrets Act (18 U.S.C.A §1836) ("DTSA"). Although Mr. Orobono did download certain information that belongs to PetroChoice at the conclusion of his consultancy period with PetroChoice, PetroChoice has not established that such documents constitute trade secrets and have no established that Mr. Orobono has utilized any of the documents at issue. In fact, the

1

evidence demonstrates that Mr. Orobono is not and has not utilized any of PetroChoice's information in any capacity. PetroChoice has not produced any evidence to the contrary. PetroChoice's corporate designee, Rob Walker, admitted during his deposition that PetroChoice does not have proof that Mr. Orobono utilized any information but that the allegations were based on assumption and conjecture due to the download. The Declaration of Rob Walker attached to the Motion for Summary Judgment also states it is Mr. Walker's "belief" that Mr. Orobono used the information but provides no evidence to support this contention. Upon inception of the lawsuit, Mr. Orobono returned all PetroChoice information in his possession.

Next, PetroChoice seeks summary judgment with regard to its breach of contract claims for an alleged violation of the non-compete and confidentiality provisions in the various agreements at issue here. The non-compete provision PetroChoice seeks to enforce is invalid as there is no legitimate business reason for the non-compete provision other than to restrain competition, which is prohibited under Pennsylvania law. Further, the non-compete provision is not limited in terms of geographic scope. Mr. Orobono has not violated the non-compete provision in any event or any of the other agreements. PetroChoice seeks to hold Mr. Orobono accountable for PetroChoice's loss of a dealership customer to which PetroChoice distributed automotive chemicals, the John Kennedy Group ("Kennedy Group"). Contrary to PetroChoice's assertions, Mr. Orobono did not solicit this customer and was not the reason PetroChoice lost this customer. JWT's employee Ed Yates - not Mr. Orobono -solicited the Kennedy Group for the sale of automotive chemicals prior to his employment with JWT, brought the Kennedy Group to JWT as an automotive chemical customer when he began his employment with JWT and Scott Williams, President of JWT made the decision for JWT to be one distributero of Wynn's products—not Mr. Orobono. The Kennedy Group already was a customer of JWT for purpose of purchasing tires.

Significant to this litigation, PetroChoice did not name JWT as a defendant in this matter but has negotiated an agreement between JWT and PetroChoice in which JWT agreed that Mr. Orobono would not be involved in the automotive chemical distribution business for a period of three (3) years – well beyond the length of the restrictive covenant PetroChoice seeks to enforce. The parties finalized the agreement almost a year ago.

The record is replete with genuine issues of material fact as to whether the documents at issue constitute trade secrets, and whether the restrictive covenants at issue are valid. There is no evidence that demonstrates that Mr. Orobono has utilized any of PetroChoice's documents outside of his employment or consultancy with PetroChoice. Finally, there is testimony from multiple witnesses that demonstrates Mr. Orobono has not been competing with PetroChoice, and did not solicit the Kennedy Group for the sale of automotive chemical products.

## II.   <u>RELEVANT FACTUAL HISTORY</u>

PetroChoice's Statement of Undisputed Facts contains very few material facts. A large portion of the facts identified include background information on PetroChoice or quotations of those certain agreements that are at issue in this case. Many of the material facts that are included are simply a word for word reiteration of the allegations set forth in the Complaint, which Defendant disputed in the Answer to the Complaint. The evidence in this case contradicts PetroChoice's material allegations regarding Mr. Orobon's actions and demonstrates that Mr. Orobono has not utilized any of PetroChoice's documents or information outside of his employment and consulting arrangement with PetroChoice, and that Mr. Orobono is not engaged in a competitive activity. *See Defendant's Response to Plaintiff's Statement of Undisputed Facts attached hereto.*

By way of background, Mr. Orobono was an employee of PetroChoice for 5 years and, thereafter, acted as a consultant to PetroChoice. During the course of his employment and during the time Orobono acted as a consultant, PetroChoice allowed Mr. Orobono access to its computer system, first through Citrix and subsequently through Microsoft 365. *Dep. Tr. Orobono p. 235: 8-21*. PetroChoice alleges it terminated Mr. Orobono's access to Citrix at the cessation of his employment/outset of his consulting relationship but Mr. Orobono's access to PetroChoice's system through Microsoft 365 was not terminated, which Mr. Orobono confirmed was acceptable with the PetroChoice IT department. *Id.* During the course of the consulting relationship with PetroChoice, Orobono had both a username and a password which enabled him to access the computer system at issue. *Dep. Tr. p. 256: 4-5.*

The time period during which Mr. Orobono acted as a consultant was set to expire at the end of August, 2019. Prior to the expiration of the consulting agreement, Mr. Orobono needed to obtain a multitude of personal documents from the PetroChoice computer system. During the course of his employment, Mr. Orobono utilized the PetroChoice computer system to store personal information including, but not limited to, personal financial records, tax returns, real estate documents, and Individualized Education Plan documents for Mr. Orobono's son. *Dep. Tr. Orobono p. 238:15-24 – p. 239:1-10.*

During the course of 2019, Mr. Orobono asked several employees of PetroChoice for assistance with downloading his personal information as he was having difficulty accessing the information. *See Dep. Tr. Orobono p. 242:1-244:6*. Without the proper assistance, he had no choice but to attempt to download the information himself. *Id.* While downloading his personal information, Mr. Orobono admits he also downloaded documents that belong to PetroChoice. *Id.* Contrary to PetroChoice's argument, Mr. Orobono did not download the information for any

nefarious purpose and has not utilized any documents or information that belongs to PetroChoice in any capacity. *See Dep. Tr. Orobono* p. 242:1-244:6; *see also Defendant's Response to Interrogatory No. 9 (attached as Exhibit 2 to Plaintiff's Statement of Undisputed Facts) ("After the cessation of Defendant's Independent Contractor Term with PetroChoice, Defendant has not utilized any of PetroChoice's Proprietary Information for any purpose.")*

## III.   <u>STANDARD</u>

A court may grant a Motion for Summary Judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.*

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). After the moving party has met its initial burden, "the adverse party's response, by affidavits or otherwise as provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Technologies, Inc.*, 78 F.Supp.2d 402, 407 (E.D.Pa.2000). The Court must view the evidence presented on the motion in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 255.

## IV.   <u>ARGUMENT</u>

### A.   **PetroChoice Is Not Entitled to Summary Judgment on its Claims for Alleged Violation of the Pennsylvania Uniform Trade Secrets Act or the Defend Trade <u>Secrets Act.</u>**

PetroChoice erroneously contends that it is entitled to summary judgment on its claims pursuant to the Pennsylvania Uniform Trade Secrets Act ("PUTSA") and the Defend Trade Secrets Act ("DTSA"). The record is replete with factual issues regarding these claims. First, PetroChoice summarily concludes that the documents Mr. Orobono downloaded constitute "trade secrets" under the law. *See Doc. 57, p. 5.*  PetroChoice does not delineate or describe specific documents at issue but lumps all documents into five categories and expects the Court to assume they are trade secrets. *Id.* This alone precludes summary judgment. Second, there is no evidence to establish that Mr. Orobono has utilized any of PetroChoice's documents outside of his employment or consultancy for PetroChoice. PetroChoice merely assumes that Mr. Orobono has utilized the documents. *See Dep. Tr. Walker p. 56: 17-p.57:13.* At a minimum, there is a disputed issue of fact to be determined at trial.

> PUTSA prohibits "misappropriation" of trade secrets and provides certain remedies.
>
> "Misappropriation" includes the following:
>  (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (2) disclosure or use of a trade secret of another without express or implied consent by a person who:
> (i) used improper means to acquire knowledge of the trade secret;
> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
> (A) derived from or through a person who had utilized improper means to acquire it;
> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.
> *12 Pa.C.S.A.   §5302*

"Trade secret" is defined as information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:

> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

The Defend Trade Secrets Act also creates a private right of action for the misappropriation of trade secrets. 18 U.S.C. § 1836(b)(1). The DTSA defines "misappropriation" as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;" or the "disclosure or use" of a trade secret without the consent of the owner. *Id*. § 1839(5)(A)–(B).

Plaintiff is required to prove the following elements under both PUTSA and DTSA: (1) the existence of a trade secret; (2) communication of the trade secret pursuant to a confidential relationship; (3) use of the trade secret in violation of that confidence; and (4) harm to plaintiff. *Moore v. Kulicke & Soffa Indus.,* 318 F. 3d 561, 566 (3d Cir. 2003); *Herley Indus. v. R Cubed Eng'g LLC*, Case No. 5:20-cv-02888, 2021 U.S. Dist. 11949, at *11 (E.D. Pa. Jan. 22, 2021).

Plaintiff has not established that the downloaded documents constitute trade secrets, has not established that Mr. Orobono has utilized any of PetroChoice's documents, and has not established Mr. Orobono caused the alleged harm – the loss of the Kennedy Group.

### 1. There Are Material Issues of Fact as to Whether the Documents at Issue Constitute Trade Secrets.

First, "[t]he question of whether certain information constitutes a trade secret is a question of fact to be resolved by the jury or the trier of fact." *Emergency Care Research Inst. v. Guidant Corp*., Civ. A. No. 06-1898, 2007 WL 2702455, at *4 (E.D.Pa. Sept.12, 2007) (quoting *Camelot*

7

*Tech., Inc. v. RadioShack Corp.*, Civ. A. No. 01-4719, 2003 WL 403125, at *5 (E.D.Pa. Feb.13, 2003).

The relevant factors used to determine whether information is a trade secret under Pennsylvania law are "substantial secrecy and competitive value to the owner." *EXL Laboratories, LLC v. Egolf*, CIV.A.10-6282, 2010 WL 5000835, at *5 (E.D. Pa. Dec. 7, 2010) (quoting *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063,1070 (Pa. Super. 2003) (quoting *Den-Tal-Ez, Inc. v. Siemens Capital Corp.*, 566 A.2d 1214, 1228 (Pa. Super. 1989)). In making this determination, Pennsylvania courts consider several sub-factors: (1) the extent to which the information is known outside of the owner's business; (2) the extent to which it is known by employees and others involved in the owner's business; (3) the extent of measures taken by the owner to guard the secrecy of the information; (4) the value of the information to the owner and to his competitors; (5) the amount of effort or money expended by the owner in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Natl. Risk Mgt., Inc. v. Bramwell*, 819 F. Supp. 417, 430 (E.D. Pa. 1993) citing *SI Handling Sys., Inc. v. Heisley*, 753 F.2d 1244, 1256 (3d Cir.1985) (citing Restatement of Torts § 757 comment b (1939)); see also *Emergency Care Research Inst.*, 2007 WL 2702455 at *5 (quoting *Pestco, Inc. v. Associated Prods., Inc.*, 880 A.2d 700, 706 (Pa. Super. 2005)).

PetroChoice does not articulate or cite to which documents constitute trade secrets. Instead, PetroChoice characterizes all documents at issue, lumps them into five separate categories and seeks this Court to summarily conclude that each downloaded document (which PetroChoice alleges consists of 5,000 documents) constitutes a trade secret. See *Plaintiff's Statement of Facts ¶78.* PetroChoice does not articulate or cite to one specific document at issue. *Id.* PetroChoice does not articulate which documents allegedly show profit and loss, which documents allegedly have

confidential pricing (instead of that of a third party) or which documents have allegedly confidential customer identities. *See Doc. 57.*

It is not possible for the Court to conduct a proper analysis of the documents to determine whether they constitute trade secrets. Further, simply because a document contains pricing, it is not automatically deemed to be a trade secret. Pricing obtained from a third party that is not confidential does not constitute a trade secret of PetroChoice. For example, any pricing from Wynn's or Valvoline is available from both Wynn's and Valvoline and thus cannot constitute PetroChoice's trade secrets. *SI Handling Sys., Inc. v. Heisley,* 753 F.2d 1244 (3d Cir.1985) (holding that Pennsylvania law differentiates between pure pricing information, readily obtainable from other sources, and proprietary pricing formulae derived from "a whole range of data relating to materials, labor, overhead, and profit margin," which is entitled to protection as a trade secret); and *Tyson Metal Prods., Inc. v. McCann*, 546 A.2d 119, 121-22 (Pa. Super. 1988) (holding that pricing information could be obtained from other sources and therefore trade secret protection was unwarranted).

The Court cannot assume for purposes of deciding Plaintiff's Motion for Summary Judgment that the documents constitute trade secrets. "The question of whether certain information constitutes a trade secret is a question of fact to be resolved by the jury or the trier of fact." *Emergency Care Research Inst. v. Guidant Corp*., Civ. A. No. 06-1898, 2007 WL 2702455, at *4 (E.D.Pa. Sept.12, 2007) (quoting *Camelot Tech., Inc. v. RadioShack Corp*., Civ. A. No. 01-4719, 2003 WL 403125, at *5 (E.D.Pa. Feb.13, 2003). PetroChoice is not entitled to summary judgment or its claims pursuant to PUTSA or DTSA. PetroChoice's Motion must be denied.

**2. Defendant Orobono Has Not Utilized Any of PetroChoice's Documents or Information and Did Not Cause PetroChoice to Lose the Kennedy Group.**

In order to successfully prove a claim under PUTSA and DTSA, Plaintiff is required to prove that Fran Orobono utilized the allegedly trade secret information. *Moore v. Kulicke & Soffa Indus.,* 318 F. 3d 561, 566 (3d Cir. 2003). PetroChoice has not adduced any evidence that Mr. Orobono utilized any document or information that belongs to PetroChoice after the consultancy period ended. To the contrary, the evidence demonstrates that Mr. Orobono has not utilized any PetroChoice documents in any manner. *See Defendant's Response to Interrogatory No. 9 ("After the cessation of Defendant's Independent Contractor Term with PetroChoice, Defendant has not utilized any of PetroChoice's Proprietary Information for any purpose.")* There is no evidence to contradict this. In fact, PetroChoice admits that it does not have information as to what Mr. Orobono allegedly has utilized but instead the allegation is based upon assumption and conjecture. *See Declaration of Rob Walker ("I...*<u>*believe*</u>* that [Orobono] used the information from PetroChoice's computer system to initiate a business relationship on JWT's behalf") See Exhibit 1 to Plaintiff's Statement of Facts, ¶82.* [emphasis added]

Although PetroChoice has never delineated what information it believes Mr. Orobono has utilized, PetroChoice wrongly <u>assumed</u> that Mr. Orobono used PetroChoice information because PetroChoice lost the Kennedy Group as a customer, which is now being serviced by JWT, Mr. Oroboo's current employer. *See Dep. Tr. Walker p. 56:17-p.57:13 ("*<u>*we felt*</u>* that Fran was using it to sell against us." "…it was believed that Fran* <u>*would*</u> *use that information to advantageously sell against us in the chemical space*.") [emphasis added]. PetroChoice based this assumption on the loss of the Kennedy Group. *Id.*

In reality, the evidence in this matter demonstrates that Mr. Orobono did not solicit for sale or sell any automotive chemicals to the Kennedy Group. More specifically, Ed Yates, prior to

receiving an offer of employment from JWT, solicited PetroChoice's customer, the Kennedy Group to transfer its business from PetroChoice to the Wynn's line of automotive chemicals. Both Mr. Orobono and Scott Williams, President of JWT, testified that it was Ed Yates who solicited the business from the Kennedy Group. *See Dep. Tr. Scott Williams, p. 25:14-24; p. 29:2-7; Dep. Tr. Orobono p. 223; p. 225:6-227:12.* Mr. Yates has a long-standing relationship with Scott Wister, who is the Director of Dealership Services for the Kennedy Group. *Id.* The Kennedy Group agreed to obtain their automotive chemicals from Mr. Yates and the Wynn's line of products. *Dep. Tr. Williams p. 25: 14-24.* Torri Fetzner, an unrelated third party who is the owner of ACTS, a distributor for Wynn's, testified that he assisted Mr. Yates in closing that deal. *Dep. Tr. Torrie Fetzner p. 34:14-24.* Mr. Orobono was not involved in the solicitation. *Id.; see also Dep. Tr. Orobono* p. *223:2-16; p. 225: 6-23; p. 229: 21-24.*

> Scott Williams further testified on this topic as follows:
>
> Q: So then when Ed Yates came on board at Jack Williams, he brought the Kennedy Group with him?
>
> A: He brought the Kennedy -- well, we already were doing business with the Kennedy Group outside of Wynn's , -- on many other items. So he had that relationship. And, yeah, he ultimately made the suggestion that we could become a delivery agent for Wynn's into the Kennedy Group. And I think it was my idea that we just sign on as a full distributor and actually not just deliver to the Kennedy Group, but actually sell the products to the Kennedy Group.
> *See Dep. Tr. Williams, p.* 29:8-23

*See also Dep. Tr. Williams* 37:7-10 ("Q: Did Fran Orobono solicit business from the Kennedy Group for the distribution of automotive chemicals? A: Not to my knowledge, no.").

Although PetroChoice has never delineated what information Orobono allegedly used, it is apparent that PetroChoice erroneously assumed that Mr. Orobono utilized PetroChoice's information because it lost the Kennedy Group. The evidence in this matter demonstrates that

Orobono did not solicit the Kennedy Group for the sale of automotive chemicals and has not utilized any PetroChoice information outside of his employment and consultancy with PetroChoice. At a minimum, there is a material issue of fact to be determined at the time of trial and PetroChoice's Motion for Summary Judgment on its claims pursuant to PUTSA and DTSA must be denied.

**B.     PetroChoice Is Not Entitled to Summary Judgment on its Claims for Alleged Breach of Contract.**

PetroChoice contends that Mr. Orobono agreed to a series of contracts including a certain Employment Agreement, Management Equity Agreement, Separation Agreement and General Release, and Consulting Agreement. The pertinent contracts are annexed as Exhibits to Plaintiff's Complaint. PetroChoice seeks summary judgment on its breach of contract claims with respect to the non-compete provision contained in the Management Equity Agreement, Separation Agreement, and Consulting Agreement. Summary judgment on these claims must be denied because (1) the non-compete provision is invalid under Pennsylvania law; (2) the evidence demonstrates that Mr. Orobono has not breached the Agreements; and (3) Mr. Orobono has not caused PetroChoice's alleged damages regarding the loss of the Kennedy Group as a customer.

**1.   The Non-Compete Provisions Are Invalid.**

First, the non-compete provisions in the Agreements are invalid as there no legitimate business reason for enforcing these restrictive provisions, which are not reasonably limited in terms of geographic scope. In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent. *Hess v. Gebhard & Co.,* 570 Pa. 148, 808 A.2d 912, 917 (2002). However, restrictive covenants are not favored in Pennsylvania and

have been historically viewed as a trade restraint that prevents a former employee from earning a living. *Id.*

Fundamental to any enforcement determination is the threshold assessment as to whether there is a legitimate interest of the employer to be protected as a condition precedent. *Id.* Covenants not to compete must be reasonably necessary to protect the employer's legitimate business interests to be enforceable. *Diodato v. Wells Fargo Ins. Servs., USA, Inc.,* 44 F. Supp. 3d 541, 568 (M.D. Pa. 2014) ; *Capsicum Grp., LLC v. Rosenthal,* 2013 WL 6667822, *8 (E.D. Pa. Dec. 17, 2013); *Shepherd v. Pittsburgh Glass Works, LLC,* 25 A.3d 1233, 1244 (Pa. Super. Ct. 2011) (legitimate, protectable business interest of the employer is a threshold requirement).

Legitimate business interests include the employer's goodwill and relationship with its customers, specialized training and skills that the employer provided to its employees, trade secrets, and confidential information. *See CertainTeed Ceilings Corp. v. Aiken*, 2014 WL 5461546, at *9-11 (E.D. Pa. Oct. 27, 2014); *Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412, 424 (3d Cir. 2010) (confidential information, good will, unique or extraordinary skills, and specialized training that would benefit competitors).

Eliminating competition, however, is not a legitimate business interest. *Mattern & Associates, LLC v. Seidel*, 678 F. Supp. 2d 256, 267 (D. Del. 2010) (*citing Hess v. Gebhard & Co.*, 570 Pa. 148, 808 A.2d 912, 918 (2002)). PetroChoice has not demonstrated a legitimate business interest that must be protected relative to Mr. Orobono in this matter. PetroChoice has not alleged or proven that if Mr. Orobono were to work for a competitor that the use of PetroChoice's confidential information would be inevitable. PetroChoice has not alleged that Orobono received any specialized training. In cases in which courts have determined that the non-compete protects a legitimate business interest, the plaintiff (and the court) conducted a complete analysis of the

particular facts at issue. For example, in the case of *Zambelli Fireworks Mfg. Co. v. Wood,* 592 F.3d 412, in which the court held the employer had a legitimate business interest that warranted enforcement of a non-compete provision against defendant, there was a thorough analysis of the position that the defendant held with his former employer, the specialized training the defendant was given by his former employer, and the customers with whom defendant had close contact and an established relationship. In that case, the court held the former employer had a protectable business interest based upon the specific facts and circumstances. *Id.* PetroChoice has conducted no such analysis in support of its Motion for Summary Judgment.

PetroChoice cites to case law that states good will and trade secrets are protectable interests but conducts no factual analysis of Orobono's position with PetroChoice, the customers with whom he may have had contact, or any particular training Orobono may have received. Mr. Walker states in his Declaration that Mr. Orobono was required to frequently and directly interact with customers. *See Walker Declaration ¶48.* Mr. Orobono, however, testified that he had very little direct client contact in his role at PetroChoice. *See Dep. Tr. Orobono p. 71: 16-18.* At a minimum, that fact remains in dispute.

Further, any protection of customer good will can be accomplished through the less restrictive non-solicitation provisions included as well as through the confidentiality provisions in the Agreements. PetroChoice has not proven through any testimony or documentary evidence why the restrictive non-compete provision for Mr. Orobono is necessary to protect an alleged legitimate business interest. It is apparent that PetroChoice imposed a non-compete provision in order to eliminate competition, which is invalid. *Id.*

Finally, the only Agreement that contains a geographic restriction is the Employment and Restrictive Covenant Agreement, which the Separation Agreement references as binding. The

geographic restriction is not reasonably limited. Section 4.4.5 of the Employment and Restrictive Covenant Agreement defines the restricted "Territory" as "any counties that Company or its affiliates markets its products or services at the time of executive's termination…". PetroChoice is a national company that markets its products throughout the country. Such restriction is entirely too broad for a former employee who held the position of "Regional Vice President" and only oversaw limited territories. *See Dep. Tr. Orobono p. 88: 10-18.*

The non-compete provisions are invalid pursuant to Pennsylvania law. At a minimum, there are issues of fact to be determined at trial as to whether there are legitimate business interests that warrant protection by means of a restrictive non-compete provision including the extent of Mr. Orobono's contact with PetroChoice customers, whether he received any specialized training, and whether the information to which Mr. Orobono had access would be inevitably disclosed to a competitor, whether the broad geographic limitation or lack of geographic limitation is enforceable - none of which has been established in this case.

2.      **Mr. Orobono is not engaged in competitive activity and has not caused PetroChoice's alleged damages of the loss of the Kennedy Group.**

PetroChoice alleges that Mr. Orobono is competing with PetroChoice in violation of the restrictive covenants contained in the Agreements at issue,[1] by allegedly establishing a competing endeavor of a chemical-sales division within JWT, allegedly disclosing confidential information to JWT, and allegedly interfering with PetroChoice's relationship with JWT. The evidence does not support PetroChoice's argument.

PetroChoice takes issue with the fact that JWT, PetroChoice's employer, is now a distributor for the Wynn's line of automotive chemicals, which allegedly competes with

---

[1] Although the Complaint contains a request for injunctive relief, PetroChoice has never sought preliminary injunctive relief.

PetroChoice's line of automotive chemical products. PetroChoice alleges that Mr. Orobono was the impetus for JWT becoming a distributor for Wynn's products and solicited PetroChoice's customers to transfer their automotive chemical needs from PetroChoice to JWT. This is inaccurate and the evidence does not support this contention.

Mr. Orobono was not the impetus or decision maker for JWT to become a distributor for the Wynn's line of products nor was he involved in soliciting any of PetroChoice's customers for the sale of this line of products. *Dep. Tr. Williams p. 25: 14-24; p. 29: 8-23; Dep. Tr. Orobono p. 229: 21-24.* More specifically, Ed Yates, prior to accepting employment with JWT, solicited PetroChoice's customer, the Kennedy Group to transfer its business from PetroChoice to the Wynn's line of automotive chemicals. *Dep. Tr. Orobono p. 225-227.* Mr. Yates has a long standing relationship with Scott Wister, who is the Director of Dealership Services for the Kennedy Group. *Id.* The Kennedy Group agreed to obtain their automotive chemicals from Mr. Yates and the Wynn's line of products. *Id.* Mr. Fetzner, an unrelated third party who is the owner of ACTS, a distributor for Wynn's, testified that he assisted Mr. Yates in closing that deal. *Dep. Tr. Fetzner p. 34: 14-24* Mr. Orobono was not involved in the solicitation. *Id.; see also Dep. Tr. Orobono* p. *223:2-16; p. 225: 6-23; p. 229: 21-24.*

Scott Williams further testified on this topic as follows:

Q: So then when Ed Yates came on board at Jack Williams, he brought the Kennedy Group with him?

A: He brought the Kennedy -- well, we already were doing business with the Kennedy Group outside of Wynn's , -- on many other items. So he had that relationship. And, yeah, he ultimately made the suggestion that we could become a delivery agent for Wynn's into the Kennedy Group. And I think it was my idea that we just sign on as a full distributor and actually not just deliver to the Kennedy Group, but actually sell the products to the Kennedy Group.
*See Dep. Tr. Williams, p.  29:8-23*

*See also* 37:7-10 ("Q: Did Fran Orobono solicit business from the Kennedy Group for the distribution of automotive chemicals? A: Not to my knowledge, no."). Ed Yates brought this business venture to JWT and the President of JWT (Williams) made the decision to become a distributor for Wynn's products – not Mr. Orobono.

Mr. Orobono testified that he was not involved in the meetings between Ed Yates and the Kennedy Group and he had no involvement in soliciting the Kennedy Group for automotive chemical sales. *See Dep. Tr. Fran Orobono p. 229: 21-24 ("I was not involved in soliciting customers. I really wouldn't know how to do that. I wasn't involved in meetings with Ed Yates or anything like that.")*

Further, in or around July of 2020, JWT and PetroChoice entered into a confidential agreement to which Mr. Orobono does not have access. Part of the agreement between JWT and PetroChoice requires that Mr. Orobono will not be involved in the Wynn's line of products for a period of three (3) years – well beyond the length of the non-compete provision PetroChoice seeks to enforce.  *See Dep. Tr. Williams at* 51: 12-22; p. 53: 14-24.  This agreement was executed approximately one year ago.

Based upon the testimony of Scott Williams, Torri Fetzner, and Mr. Orobono, PetroChoice is well aware that Mr. Orobono was not involved in the solicitation of the Kennedy Group, and that Mr. Orobono was neither the impetus nor the decision maker for JWT to become a distributor for Wynn's line of automotive chemicals. He did not solicit the Kennedy Group or any other PetroChoice customer for the purpose of selling automotive chemicals. Orobono was not involved in sales or solicitation of customers that would constitute a breach of any of the Agreements at issue. Finally, as set forth in detail above, Mr. Orobono did not utilize or disclose any of PetroChoice's documents to JWT.

PetroChoice is not entitled to summary judgment on its breach of contract claims. PetroChoice has not proven that Mr. Orobono has breached the Agreements at issue and has not proven that Mr. Orobono caused PetroChoice's alleged damages of the loss of the Kennedy Group – two essential elements of any breach of contract claim. *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.* 635 Pa. 427 (Pa. 2016) ("It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages.")

## C.  **Plaintiff Is Not Entitled to Summary Judgment on its Unjust Enrichment Claim.**

Plaintiff seeks summary judgment on its claim for unjust enrichment based upon the terms and conditions of the Separation Agreement.  To recover for unjust enrichment, a plaintiff must prove that: (1) the plaintiff conferred benefits upon the defendant; (2) the defendant appreciated and accepted such benefits; and (3) it would be inequitable for the defendant to retain the benefit without payment of the value. *Wiernik v. PHH U.S. Mortgage Corp*., 736 A.2d 616, 622 (Pa. Super. 1999).  A plaintiff cannot recover for unjust enrichment when an express contract governs the relationship between the parties. *Hershey Foods Corp. v. Ralph Chapek, Inc*., 828 F.2d 989, 999 (3d Cir.1987); *Villoresi v. Femminella*, 856 A.2d 78, 84 (Pa.Super. 2004) (finding that an unjust enrichment claim may only arise when a transaction of the parties is not otherwise governed by an express contract.). "An express contract is one where the parties specifically express the terms of the agreement, either orally or in writing." *Crawford's Auto Center, Inc. v. Com. of Pa*., 655 A.2d 1064, 1066 (Pa.Cmwlth.1995).

Plaintiff seeks summary judgment on its breach of contract claim regarding the Separation Agreement. Plaintiff definitively claims that the terms and conditions of the Separation Agreement

governs the relationship between PetroChoice and Mr. Orobono. Plaintiff cannot also recover under an unjust enrichment theory. While these claims may be pled in the alternative in a complaint, a plaintiff must choose under which theory it seeks recovery. Plaintiff has opted to attempt to enforce the terms of the Separation Agreement. Summary judgment on the unjust enrichment claim must be denied.

Further, as set forth in detail above, Mr. Orobono has not violated the terms of the Separation Agreement and, thus, has not been unjustly enriched by receipt of the severance payments.

## V.    **CONCLUSION**

For the reasons set forth above, Plaintiff PetroChoice Holdings is not entitled to summary judgment on its claims pursuant to the Pennsylvania Uniform Trade Secrets Act, the Defend Trade Secrets, its breach of contract claims, or its unjust enrichment claim. Plaintiff's Motion for Summary Judgment must be denied.

Respectfully submitted,

**LAMB McERLANE PC**


Date:     June 29, 2021                    By:    _____/s/ Mary-Ellen H. Allen_____
                                                    Joel L. Frank (I.D. No. 46601)
                                                    Mary-Ellen H. Allen (I.D. No. 83885)
                                                    24 East Market Street
                                                    P.O. Box 565
                                                    West Chester, PA 19381-0565
                                                    Phone:  (610) 430-8000
                                                    Fax:  (610) 696-6668

                                                    *Attorneys for Defendant,*
                                                    *Francis S. Orobono, Jr.*

## CERTIFICATE OF SERVICE

This is to certify that in this case complete copy of the foregoing Response to Plaintiff's Motion for Summary Judgment has been filed electronically and is available for viewing and downloading from the ECF system.  This document is being served upon the following counsel by electronic filing and service procedures:

| Name | Means of Service | Date of Service |
|------|------------------|-----------------|
| Steven D. Urgo, Esquire<br>Lewis Brisbois Bisgaard & Smith<br>550 E. Swedesford Road, Suite 270<br>Wayne, PA 19087 | Electronic Filing | June 29, 2021 |
| Jon J. Olafson, Esquire<br>Kayla D. Dreyer, Esquire<br>Lewis Brisbois Bisgaard & Smith<br>1700 Lincoln Street, Suite 4000<br>Denver, CO  80203 | Electronic Filing | June 29, 2021 |

**LAMB McERLANE PC**

Date:   June 29, 2021            BY:   *s/Mary-Ellen H. Allen*

Mary-Ellen H. Allen
I.D. No. 83885
24 East Market Street
Post Office Box 565
West Chester, PA  19381-0565
610-430-8000
mallen@lambmcerlane.com