IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PETROCHOICE HOLDINGS, INC.
      Plaintiff,

- against -

FRANCIS S. OROBONO, JR.,

      Defendant.

CIVIL ACTION

No. 19-6152-JMG

**PETROCHOICE HOLDINGS, INC.'S REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

1. **Defendant's Improper Summary Judgment Evidence** ............................................... 1
2. **PetroChoice's Summary Judgment Evidence.** ............................................... 2
3. **Defendant Stole PetroChoice's Trade Secrets.** ............................................... 2
4. **Defendant Utilized PetroChoice's Trade Secrets.** ............................................... 4
5. **The relevant non-competition provisions are valid and enforceable.** ............................................... 6
6. **Defendant has breached his agreements and damaged PetroChoice.** ............................................... 7

PetroChoice Holdings, Inc. ("PetroChoice"), by and through its undersigned attorneys, hereby submit this Reply in Support of its Motion for Summary Judgment, and states as follows:

**1. Defendant's Improper Summary Judgment Evidence**

As a threshold matter, Defendant cites to the *Answer to Complaint and Affirmative Defenses of Francis S. Orobono, Jr.* (Dkt. No. 33) (the "Answer") upwards of 18 times to controvert various allegations contained in PetroChoice's Statement of Undisputed Facts (Dkt. No. 57-1) (the "Statement of Undisputed Facts" or "SUF"). (*See* Dkt. No. 66-1 ¶¶ 68–77, 81, 82, 86, 87, 94, 95, 98, 99). However, denials contained within an answer are insufficient to withstand a

motion for summary judgment. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (explaining that a party's opposing summary judgment must do more than just rest upon mere denials of the pleading); *A.M. v. Landscape Structures, Inc.*, No. 1:14-cv-1376; 2017 U.S. Dist. LEXIS 76679, at *43–48 (M.D. Pa. May 19, 2017) (a general denial in an answer does not create a genuine dispute of material fact at the summary judgment stage); *Alleghany Corp. v. Romco, Inc.*, 392 F. Supp. 38, 40 (W.D. Pa. 1975) (the denial of liability in the answer is insufficient to preclude summary judgment); *HICA Educ. Loan Corp. v. Fidelibus*, No. 14-2704; 2015 U.S. Dist. LEXIS 86339, at *3 (D.N.J. July 2, 2015) ("defendant's denial of liability in his answer is insufficient to withstand summary judgment").

Therefore, for purposes of summary judgment, Defendant has failed to properly dispute the following statements of facts pursuant to F.R.C.P. 56(c), and they must be accepted as true by the Court: Dkt. No. 66-1 ¶¶ 68–77, 81, 82, 86, 87, 94, 95, 98, 99.

2. **PetroChoice's Summary Judgment Evidence.**

The Response is replete with contentions PetroChoice's summary judgment evidence is incomplete, insufficient, or otherwise improper. Def. Resp. at pp. 1–3, 6–8, 10–13, 15–16. Defendant selectively ignores the majority of PetroChoice's Statements of Material Facts, which are largely affirmations of allegations contained in the Complaint and the Declaration of Robert Walker. To the extent the Court finds it necessary that PetroChoice buttress its Statement of Undisputed Facts with additional evidence, PetroChoice is submitting another declaration herewith to provide additional evidentiary support. *See* Exhibit 9.

3. **Defendant Stole PetroChoice's Trade Secrets.**

Defendant responds that PetroChoice failed to satisfy its summary judgment burden because it has not provided the Court with any evidence that the taken files constitute its trade

secrets. PetroChoice did not include with its Motion all of the taken files because Defendant failed to return all of the downloaded materials, and the documents that were stolen and returned are voluminous. PetroChoice attaches with this Reply six different documents under seal—which its expert has concluded were downloaded by Defendant on the eve of the termination of his consultancy period and relationship with PetroChoice—that are representative of the types of files taken by Defendant. *See* Exhbits 10–15. The attached files include information about sales programs and incentives for Valvoline; Valvoline's national account contact list; PetroChoice's summary sales history report in connection with Valvoline sales; a sales strategy memorandum; PetroChoice's income statements, supplier volume summary, and other proprietary financial documents; and PetroChoice's top 25 customer list. All of this material PetroChoice considers to be confidential and a trade secret. At the request of this Court, PetroChoice will provide the entirety of the files taken by Defendant from PetroChoice's computer system that it claims to be trade secrets under seal.

Defendant cites to the *Emergency Care Research Inst. v. Guidant Corp.* opinion to support his contention that the relevant factors to determine whether a trade secrets exists under Pennsylvania law is "substantial secrecy and competitive value to the owner." However, PetroChoice does not dispute the relevant standard or factors and contends that it has satisfied its burden in this regard.

Significantly, the salient facts support summary judgment and Defendant has not put forth any evidence to challenge PetroChoice's assertions with regard to the stolen file's trade-secret status. While the determination of whether material is a trade secret is a question of fact, "[f]actual issues are subject to summary judgment whenever the law as applied to uncontroverted facts shows that the movant is entitled to summary judgment." *See Camelot Tech. v. Radioshack Corp.*, No.

01-CV-4719, 2003 U.S. Dist. LEXIS 2517, at *16 (E.D. Pa. Feb. 13, 2003). Thus, the Court should find in PetroChoice's favor as to this initial element of its DTSA and PUTSA claims.

**4. Defendant Utilized PetroChoice's Trade Secrets.**

Defendant contends that PetroChoice has no evidence to demonstrate he utilized PetroChoice's trade secrets after their unlawful download. Tellingly, there is no dispute that Defendant intended to download the taken files onto a laptop owned and issued by JWT, a competitor of PetroChoice. *See* Ex. 2, Resp. RFA. No. 14. Second, Defendant gave the downloaded files to JWT after this lawsuit was filed. *See* Ex. 2, Resp. Interrog. No. 15. Finally, PetroChoice obtained through a third-party a communication, purporting to be from Defendant, setting up JWT's competing chemical sales business as a Wynn's distributor. The communication indicates that Defendant utilized a PetroChoice ROI (or Return on Investment) form, which PetroChoice maintains constitutes its trade secrets. *See* Exhibit 16. The document speaks for itself and demonstrates use of PetroChoice's trade secrets by Defendant for the benefit of his new employer, JWT.

Even so, PetroChoice urges this Court to apply the inevitable disclosure doctrine in granting it summary judgment in connection with its trade secrets claims. The inevitable disclosure doctrine provides that a plaintiff may prove a claim of trade secret misappropriation by demonstrating that defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets. *Bimbo Bakeries USA, Inc. v. Botticella*, 613 F.3d 102, 111 (3d Cir. 2010); *Pepsi Co, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). Under this doctrine a plaintiff can obtain relief when:

> (1) the employers in question are direct competitors providing the same or very similar products or services; (2) the employee's new position is nearly identical to his old one, such that he could not reasonably be expected to fulfill his new job

responsibilities without utilizing the trade secrets of his former employer; and (3) the trade secrets at issue are highly valuable to both employers.

*EarthWeb, Inc. v. Schlack*, 71 F. Supp. 2d 299, 310 (S.D.N.Y. 1999). Here, all of these requirements are satisfied. To the extent the Court finds evidence supporting the "use" element lacking, PetroChoice respectfully requests that the Court find its trade secrets have been inevitably disclosed to JWT.

Last, PetroChoice incorporates its arguments from its Motion for Sanctions and Reply in Support thereof herein, through which it requests an inference in connection with proving this element of its trade secrets claims. PetroChoice has been significantly prejudiced by Defendant's spoliation of evidence in proving its trade secrets claims. Prejudice exists when a Defendant destroys evidence in a trade secret case that adversely affects Plaintiff's "ability to find and prove the extent of information that Defendant[] took." *Steam Cos. v. Windward Adver.*, No. 12-cv-4549; 2013 U.S. Dist. LEXIS 100319, at *18 (E.D. Pa. July 17, 2013). Furthermore, "that prejudice is more pronounced in this instance, as the actual information taken and how it is used is of significant importance to [PetroChoice]'s trade secret claim." *Id*. (*citing Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 391 (D.N.J. 2011) (finding prejudice in trades secret case for destruction and erasure of computer files, e-mails, thumb drives, and CD-ROMS)). PetroChoice has undertaken, at its own significant expense and efforts, to recover all of the downloaded files from Defendant to no avail. Without access to these files, and the metadata contained therein, it lacks insight into how its trade secrets were utilized once taken by Defendant. Thus, PetroChoice has had no choice but to move for a spoliation inference.

For all of the foregoing, the Court should conclude that PetroChoice's trade secrets were taken by Defendant for the benefit and use of Defendant for the benefit of his new employer.

**5. The relevant non-competition provisions are valid and enforceable.**

Defendant also argues that PetroChoice has not demonstrated a legitimate business interest to be protected in connection with Defendant's former employer and consultancy on behalf of PetroChoice. Defendant fails to cite to any legal authority that PetroChoice must prove Defendant's competition would lead to the inevitable disclosure of confidential information, or that a non-competition provision is only valid if an employee receives specialized training. Defendant further maintains that PetroChoice failed to conduct a detailed analysis of the specific facts supporting its contention that it has a legitimate business interest in connection with Defendant specifically. PetroChoice will provide the analysis below.

In his position as Vice President of Sales and then Regional Vice President at PetroChoice (previously operating as Craft Oil), Defendant managed and oversaw a robust sales team in New Jersey, Delaware, New York, and parts of Pennsylvania. Ex. 3 at p. 47:4–8. In that role, he was directly responsible for overseeing the activity of every account and maintaining the business relationship with the customer. Exhibit 17 at p. 50:16–20. After Craft Oil was acquired by PetroChoice, Defendant's role increased, as he became responsible for looking after more business throughout the same geographic territory. *See* Ex. 17 at pp. 65:21–70:13. Defendant also became responsible for operations in the Northeast division and the amount of people he oversaw on the sales team also almost doubled. *Id*.

As such, he had attendant access to and intimate familiarity with PetroChoice's confidential business and sales information, in addition to sales strategies (Ex. 10–15, Ex. 3 at pp. 234:20–235:2), which are legitimate and protectable parts of a business' goodwill relationship with its clients. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 424 (3d Cir. 2010). Defendant had access to PetroChoice's client list, pricing, and business strategy, and had a longstanding

relationship with PetroChoice's clients. PetroChoice therefore had a legitimate business interest to ensure that Defendant did not transfer that goodwill to its direct competitor. *See id*.

Last, Defendant argues that the geographic limitations contained in the non-competition provisions are overbroad as written. If the Court agrees with Defendant's assertion, as explained in the Motion, this Court may "blue pencil" a restrictive covenant so that it is valid and enforceable. *See Hess.*, 808 A.2d at 920; *Sidco*, 351 A.2d at 255 n.8. Further, there is no dispute that Defendant and JWT directly competed and currently competes with PetroChoice in the chemical-sales business in the same sales territory (the PetroChoice "Northeastern" territory) in which Defendant previously operated on behalf of PetroChoice. The Northeastern territory included all of New Jersey, Delaware, and New York, and parts of Pennsylvania (east of Harrisburg to New Jersey). For example, Defendant had interactions with the auto-chemical clients, and oversaw the sales team, in his previous role as Vice President at PetroChoice.

Thus, any reformation of the subject restrictive covenants to the Northeastern territory does not provide a safe harbor for Defendant to unlawfully compete as a salesman of Wynn's auto-chemical business on behalf of JWT in the same counties and territories in which he previously worked on behalf of PetroChoice.

### 6. **Defendant has breached his agreements and damaged PetroChoice.**

Defendant maintains that he did not breach any of the relevant agreements he has with PetroChoice because he did not directly solicit the Kennedy Group as a Wynn's customer on behalf of JWT and is <u>currently</u> not competing in the chemical sales division at JWT. As an initial matter, Defendant failed to contravene any of the other evidence proffered by PetroChoice demonstrating that he breached his confidentiality, non-disparagement, non-interreference, return-of-company property obligations, or duties owed to PetroChoice pursuant to the agreements, focusing solely

on the non-competition provisions contained in the agreements. As a result, PetroChoice's arguments as to those allegations should be accepted by the Court in their entirety. *See, e.g.*, *Equitrans Servs., LLC v. Precision Pipeline, LLC*, 154 F. Supp. 3d 189, 205 (W.D. Pa. 2015) (holding that a party's failure to address arguments against its claims in a response to a Rule 56 motion constitutes an abandonment of those claims).

Defendant also argues that even if he did breach the agreements, PetroChoice was not damaged because someone else (Ed Yates) solicited the Kennedy Group on behalf of JWT. However, Defendant reads the restrictive covenants contained in the agreements too narrowly. The uncontroverted evidence[1] demonstrates that Defendant was responsible for: setting up internal team meetings to discuss Wynn's business; submitting a proposal for the Kennedy Group Wynn's business to JWT's Wynn's distribution channel partner; finalizing the "Return of Investment" documentation in connection with the Kennedy Group and submitting the first Kennedy Group order for Wynn's chemical products for final approval; finalizing, overseeing, and approving chemical product invoices for the Kennedy Group; making determinations about commission credits in connection with Wynn's sales; ensuring JWT's marketing material included a logo advertising Wynn's products; attending Wynn's sales trainings; and having access to important information necessary for Wynn's distributors to provide to JWT's new customer base, among others. (Ex. 3 at pp. 229:6–24; Ex. 5 at pp. 24:16–22, 26:3–27:5, 30:10–31:6,64:8–24; Ex. 6 at pp. 133:14–17, 138:24–139:18.)

---

[1] Defendant summarily denied these facts in his Response to PetroChoice's Statement of Undisputed Facts without citation to any record evidence in support. (*See* Dkt. No. 66-1 ¶85: "Denied, this is not an accurate representation of Defendant's role at JWT") Defendant has failed to set forth any proper Rule 56(c) evidence to dispute PetroChoice's evidence, and therefore PetroChoice's statement of facts must be accepted as true by the Court. The existence of a scintilla of evidence—and here there is not even that—is insufficient to deny a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The proffered facts that concern Defendant's role in directing, supporting, and maintaining JWT's Wynn's sales business (and its customer, the Kennedy Group), must therefore be accepted as undisputed fact by the Court. These activities fall squarely within the agreements' prohibitions on engaging in competitive activity on behalf of a competing business. (SUF ¶¶ 17–19, 45.) Thus, Defendant's conduct breached his non-competition restrictions for a period of time (even if he is not currently engaged in the Wynn's chemical sales business). That Defendant alleges he is currently not breaching his agreements by competing does not excuse his prior unlawful conduct.

Defendant further maintains he did not damage PetroChoice because he did not directly solicit the Kennedy Group chemical-sales business away from PetroChoice to JWT. As demonstrated above, even if Defendant was not directly responsible for the loss of the Kennedy Group business (which PetroChoice does not accept), he was still in charge of maintaining and overseeing the ongoing business relationship between JWT and the Kennedy Group, thus damaging PetroChoice.

Even so, PetroChoice's damages go far beyond its loss of the Kennedy Group business. Defendant used his position as a consultant to retrieve confidential information and trade secrets for his own benefit and the benefit of JWT without authorization by PetroChoice, in direct violation of his written and executed agreements with PetroChoice. During the consultancy period with PetroChoice, he was in the process of setting up JWT's competing Wynn's sales line unbeknownst to PetroChoice, in violation of his restrictive covenants. Defendant was provided $14,583.33 in severance pay and $160,416.67 in independent consulting fees and a vehicle at the time of separation, by PetroChoice, pursuant to the terms of the Separation Agreement and Consulting Agreement. PetroChoice seeks disgorgement of these contractual benefits from Defendant in full, along with pre-judgment and post-judgment interest, because Defendant's actions deprived

PetroChoice of its rights and benefits under those agreements. Moreover, PetroChoice has been deprived of the benefit of its stolen property (the downloaded files), the majority of which seem to be permanently missing.

In sum, PetroChoice can satisfy the final element of its breach of contract claim because it has demonstrated with material, undisputed evidence that it was damaged by Defendant's breaching conduct.

Dated this 20th day of July, 2021.                Respectfully Submitted,

                                                                                  LEWIS BRISBOIS BISGAARD & SMITH LLP

By: /s/ *Kayla Dawn Dreyer*
    Steven D. Urgo, ID No. 62773
    550 E. Swedesford Road, Suite 270
    Wayne, Pennsylvania 19087
    Telephone: 215.977.4078
    steven.urgo@lewisbrisbois.com

    Jon Jay Olafson
    1700 Lincoln Street, Suite 4000
    Denver, CO 80203
    Telephone: 303.861.7760
    Jon.Olafson@lewisbrisbois.com

    Kayla Dawn Dreyer
    1700 Lincoln Street, Suite 4000
    Denver, CO 80203
    Telephone: 303.861.7760
    Kayla.Dreyer@lewisbrisbois.com

    *Attorneys for Plaintiff PetroChoice Holdings, Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 20th day of July, 2021, the undersigned served the foregoing **PETROCHOICE HOLDINGS, INC.'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** upon counsel via ECF:

Joel L. Frank
Lamb McErlane PC
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565
jfrank@lambmcerlane.com

Mary-Ellen H. Allen
Lamb McErlane PC
24 East Market Street
P.O. Box 565
West Chester, PA 19381-0565
mallen@lambmcerlane.com
mallen@chescolaw.com

                                                /s/    *Kayla Dawn Dreyer*
                                                  *A duly signed original is on file at the*
                                                  *Law Offices of LEWIS BRISBOIS*